**Tirey Glen SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–99–00066–CR.

Court of Appeals of Texas, Tyler.

Sept. 28, 2000.

Discretionary Review Granted April 11, 2001.

Kenneth Nash, for appellant.

Panel consisted of DAVIS, C.J., HADDEN and WORTHEN, JJ.

DAVIS, Chief Justice.

Tirey Glen Smith, Appellant, appeals his conviction for aggravated sexual assault of a child. The trial court assessed punishment at imprisonment for life. He appeals on two issues: (1) denial of his right of confrontation of the complaining witness, and (2) improper admission of hearsay through the doctor who examined the complaining witness. We affirm.

### BACKGROUND

The complaining witness, A.G., was the five-year-old daughter of Melinda Moore ("Moore"), Appellant's live-in girlfriend. At the time of trial, A.G. was seven years of age. The evidence at trial shows that A.G. had lived with her grandmother, Shirley Gober ("Gober"), until August 3, 1996 when she went to stay with Moore and Appellant. On December 28, 1996, A.G. telephoned her grandmother and asked if she could come live with her again. Her grandmother agreed and A.G. returned to her home the next day. In February of 1997, A.G. made a general allegation of sexual abuse to her grandmother. In response, Gober took A.G. to her family physician Robert Thompkins, M.D. ("Thompkins") on February 20, 1997. A.G. told Thompkins that "her mother's boyfriend, Tirey, had sexed her ... in the front and in the back and that it was painful and caused her to bleed."

The next day Gober took A.G. to Child Protective Services ("CPS"). Lea Proudfoot ("Proudfoot"), a CPS investigator, interviewed A.G. on February 21, 1999 regarding her complaint of sexual abuse. The interview was videotaped ("first videotape"), and was subsequently admitted into evidence at trial as was a second videotaped interview ("second videotape") by Proudfoot taken immediately before trial in which she asked questions submitted by Appellant. It is the trial court's admission of the videotaped testimony of A.G. which, in his first issue, Appellant argues violated his constitutional right to confrontation.

On February 26, 1997, Jamie Coffman, M.D. ("Coffman"), a pediatrician, performed a physical exam on A.G., but it was inconclusive. However, Coffman testified over Appellant's objection to the history she obtained from Gober, the child's grandmother. That history as recorded by Coffman stated:

> It was bedtime. She was hungry and got a weenie out of the refrigerator. She asked papa what it was called and asked if it was a man's weenie. She said she saw her daddy's, Tirey Smith's. She said he was sexing her momma, and he sexed her, too. She said her momma helped him put it in, and she bled, and her momma got a towel and cleaned her up and put a salve on it. I took her to Dr. Thompkins, and she told him, and he checked her on Thursday, February

20th. I've had [A.G.] since December 29th.

Coffman then testified without objection as to the history she obtained from A.G. as follows:

Ti put his weenie in my front private. One time he missed, and it went in the middle. He did it a bunch of times. My mommy helped him put his weenie in. In Dallas, I saw mommy and Ti do it. Mommy would make me take my clothes off. One time the stuff that's in Ti's weenie was on a towel, and mommy made me lick it. It was yucky. When he put his weenie in, it hurt. I bled. Not every time. There was a lot of blood.

It is the trial court's admission of the first history related by Gober to Coffman that Appellant, in his second issue, argues was improper hearsay. No objection was made, nor issue raised here, regarding the second history which Coffman obtained from A.G.

Moore testified that on the date of the offense she awoke to find Appellant lying next to her holding A.G. down on top of him with her private part over his. Both were naked. Appellant would not let A.G. go. Moore had to grab his penis to force him to let her go. A.G. was bleeding in her vaginal area. Moore testified under a grant of transactional and testimonial immunity after having pleaded guilty and having been sentenced to twenty-five years' imprisonment for the same offense.

Appellant testified and denied having had sexual relations with A.G. However, on cross-examination, he admitted that everything in the videotaped interviews and Moore's testimony was true, except that he never penetrated A.G.'s female sex organ.

· The jury found Appellant guilty and assessed punishment at imprisonment for life.

### THE ADMISSION OF THE VIDEOTAPES

The issue of the admissibility of the videotaped interview of A.G. taken at Child Protective Services on February 21, 1997, was first raised at pre-trial when Appellant objected to the State's Motion To Declare Child Victim Unavailable And To Introduce Recording Of Oral Statement. Appellant argued that he be allowed "his constitutional guaranteed right of confrontation" reasoning that it had been two years since the offense, the child had been in treatment, and it would be appropriate to allow the child to testify before the jury from the stand. The State argued in its motion that the child was five years old at the time of the offense, was only seven years old at trial, was not emotionally stable, suffered from Tourette's syndrome [1] which would be exaggerated under stress, and would be emotionally distressed by having to testify in Appellant's presence in a courtroom setting. It further argued that such distress would be more than mere nervousness, excitement or reluctance to testify; it asserted that A.G. would suffer undue psychological, and possibly physical, harm if required to testify at trial.

On March 8, 1999 a hearing was held on the motion. A.G. testified first in the courtroom without a jury, then in the judge's chambers after she had difficulty responding in the courtroom. Appellant was present in the courtroom during the courtroom portion of the hearing, then observed A.G. by closed circuit television during the in-chambers portion. His at-

---

1. Tourette's syndrome is defined as "a severe neurological disorder characterized by multiple facial and other body tics, usually beginning in childhood or adolescence and often accompanied by grunts and compulsive utterances, as of interjections and obscenities." STEDMAN'S MEDICAL DICTIONARY 841 (1995).

torney was present and participated in questioning A.G. in both settings. During both portions of the hearing A.G. had great difficulty responding to any questions regarding the actual facts of the alleged sexual assault. She was unable to cope with the facts and circumstances of the alleged offense in either the courtroom or the judge's chambers. She would repeatedly get off the subject, ask to go to the restroom, get a tissue or perform other avoidance behavior whenever she was questioned about the facts at issue.

The trial court next heard the testimony of Lisa Wallace, a masters level psychologist, who had been counseling A.G. She testified that as the trial date approached, she observed the following: (1) A.G.'s emotional stability became progressively worse; (2) she became more agitated, emotional and withdrawn; (3) she had a recurrence of a motor tick; (4) symptoms of her Tourette's syndrome worsened; (5) she had trouble sleeping and had a recurrence of her bed wetting problem; and (6) she had difficulty communicating. For these reasons, Wallace was concerned about the detrimental effects testifying at a trial would have on her. The trial judge also viewed the videotape taken on February 21, 1999.

After hearing arguments of counsel, the trial judge found that A.G. was immature and unable to cope with facts and circumstances in the courtroom, that she lacked emotional stability, exhibited repeated avoidance of discussion of the facts of the offense, veered off into something other than the issue presented both in the courtroom and in chambers, and that if called to

testify there was a great potential for psychological harm. Based on these findings, the trial court held that A.G. was unavailable for purposes of testifying in the courtroom pursuant to TEX.CRIM.PROC.CODE ANN. art. 38.071, § 8 (Vernon 2000)[2].

Having found A.G. unavailable, the trial court next found that the requirements of Article 38.071, section 2(a) were met in the taking of the videotape, and that it was admissible for all purposes under that section. The trial court then allowed Appellant's counsel to propound written interrogatories, pursuant to Article 38.071, section 2(b). The interrogatories were ultimately asked by Proudfoot, the same CPS investigator who had earlier questioned her. Additionally, A.G. was questioned in the same room where she was originally videotaped. In this setting, A.G. answered the questions she did not answer in the courtroom or judge's chamber. A videotape of those questions and answers was made, offered into evidence, and admitted over Appellant's objection. The child, A.G., never testified in the courtroom in the presence of the jury.

### THE RIGHT TO CONFRONTATION

Appellant argues in his first issue that the trial court's admission of the videotapes into evidence violates his constitutional right of confrontation under the Sixth Amendment to the United States Constitution and Article 1, section 10 of the Texas Constitution.[3]

### Trial Court's Application of Article 38.071

Article 38.071 provides a detailed procedure by which a videotaped interview of a

---

**2.** All future section references are from TEX. CRIM.PROC.CODE ANN. art 38.071.

**3.** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted by the witnesses against

them...." U.S. CONST. amend. VI. The Texas Constitution states that "[i]n all criminal prosecutions, the accused shall ... be confronted by the witnesses against him...." TEX. CONST.ANN. art. I, § 10 (Vernon 1999).

child may be admitted into evidence in a trial for the offense of aggravated sexual assault of a child. Pertinent sections are as follows:

### Art. 38.071 Testimony of child who is victim of offense.

Sec. 1. This article applies only to a proceeding in the prosecution of an offense defined by any of the following sections of the Penal Code if the offense is alleged to have been committed against a child 12 years of age or younger and if the trial court finds that the child is unavailable to testify at the trial of the offense, and applies only to the statements or testimony of that child:

. . . .

(4) Section 22.021 (Aggravated Sexual Assault);

. . . .

Sec. 2. (a) The recording of an oral statement of the child made before the indictment is returned or the complaint has been filed is admissible into evidence if the court makes a determination that the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child abuse cases that seeks to find the truth of the matter.

(b) If a recording is made under Subsection (a) of this section and after an indictment is returned or a complaint has been filed, by motion of the attorney representing the state or the attorney representing the defendant and on the approval of the court, both attorneys may propound written interrogatories that shall be presented by the same neutral individual who made the initial inquiries, if possible, and recorded under the same or similar circumstances of the original recording with the time and date of the inquiry clearly indicated in the recording.

(c) A recording made under Subsection (a) of this section is not admissible into evidence unless a recording made under Subsection (b) is admitted at the same time if a recording under Subsection (b) was requested prior to time of trial.

. . . .

Sec. 8. (a) In making a determination of unavailability under this article, the court shall consider relevant factors including the relationship of the defendant to the child, the character and duration of the alleged offense, the age, maturity, and emotional stability of the child, and the time elapsed since the alleged offense, and whether the child is more likely than not to be unavailable to testify because:

(1) of emotional or physical causes, including the confrontation with the defendant or the ordinary involvement as complainant in the courtroom trial; or

(2) the child would suffer undue psychological or physical harm through his involvement at trial.

(b) A determination of unavailability under this article can be made after an earlier determination of availability. A determination of availability under this article can be made after an earlier determination of unavailability.

Sec. 9. If the court finds the testimony taken under Section 2 or 5 of this article is admissible into evidence or if the court orders the testimony to be taken under Section 3 or 4 of this article and if the identity of the perpetrator is a contested issue, the child additionally must make an in-person identification of the defendant either at or before trial.

. . . .

Sec. 12. In this article, 'cross-examination' has the same meaning as in other legal proceedings in the state.

TEX.CRIM.PROC.CODE ANN. art. 38.071 (Vernon Supp.2000).

Our review of the record indicates that the trial judge properly followed the provisions of Article 38.071. *See Lively v. State*, 968 S.W.2d 363 (Tex.Crim.App. 1998); *Ward v. State*, 910 S.W.2d 1 (Tex. App.—Tyler 1995, pet. ref'd). Appellant does not really complain of the trial court's application of this statute, but complains that the statute itself denies him an adequate opportunity to confront his accuser. The real issue, as we see it, and as argued by Appellant, is whether section 2 of Article 38.071 provides a procedure that, when properly applied as it was in this case, adequately ensures an accused's constitutionally guaranteed right to confrontation. Stated more simply, after a proper determination of unavailability, does the opportunity to propound written cross-examination interrogatories to be asked by the original video interviewer satisfy the constitutionally guaranteed right to confrontation of an accused? We hold that it does.

***Cross-examination by written questions***

Article 38.071, section 2 was amended by the Legislature in 1987 to provide the procedures used in this case. It included a new provision giving defendant the right to propound written cross-examination questions to be asked by the same interviewer, in the same setting as the original videotaped interview. Prior to this amendment, the only opportunity for the accused to cross-examine the complaining witness was to call the witness to the stand to testify. The 1985 version of section 2 provided:

Sec. 2. (A) The recording of an oral statement of the child made before the proceeding begins is admissible into evidence if:

(1) no attorney for either party was present when the statement was made;

(2) the recording is both visual and aural and is recorded on film or videotape or by other electronic means;

(3) the recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered;

(4) the statement was not made in response to questioning calculated to lead the child to make a particular statement;

(5) every voice on the recording is identified;

(6) the person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) the defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and

(8) the child is available to testify.

Act of May 25, 1983, 68th Leg., R.S., ch. 599, § 1, 1983 Tex.Gen.Laws 3828, 3829 (amended 1987) (current version at TEX. CRIM.PROC CODE ANN. art. 38.071, § 2 (Vernon Supp.2000)).

In 1987 the Texas Court of Criminal Appeals held the 1985 version of Article 38.071, section 2 unconstitutional on its face. *Long v. State*, 742 S.W.2d 302 (Tex. Crim.App.1987). The court stated that it would impose upon the defendant a constitutionally unacceptable burden to require "the defendant to call as a witness his accuser if he wants to question the witness" *Id.* at 320; *accord Mallory v. State*, 752 S.W.2d 566 (Tex.Crim.App.1988)

However, in 1990, the Texas Court of Criminal Appeals revisited *Long*. In *Briggs v. State*, 789 S.W.2d 918 (Tex.Crim. App.1990) the Texas Court of Criminal Appeals reversed *Long* holding that "for-

mer Article 38.071, section 2, *supra*, can be applied without offending either the state or the federal constitution." *Id.* at 923–24. In *Briggs,* the twelve-year-old complaining witness was called by the State to testify, was questioned by the State, and then briefly cross-examined by the defense. The State then offered a videotape of an interview taken some eighteen months earlier at the Texas Department of Human Services, which was admitted. Since the complaining witness was actually called to testify by the State and cross-examined by the defense, the court reasoned that the accused's confrontation rights had been satisfied. The Texas Court of Criminal Appeals, however, went on to state that former Article 38.071, section 2 "may be unconstitutional as applied in certain cases" such as when "a videotape is admitted though 'full and effective cross-examination' of the child witness should prove unattainable at trial." *Id.* at 922. Appellant argues this is such a case. We disagree.

■ In 1987 the Texas Legislature's amendment of Article 38.071 section 2 provided a new vehicle for cross-examination of a child witness who has been determined unavailable to testify in a traditional courtroom setting. This procedure provides that the defense attorney (as well as the State) may "propound written interrogatories that shall be presented by the same neutral individual who made the initial inquiries, if possible, and recorded under the same or similar circumstances of the original recording...." Tex.Crim.Proc. Code Ann. art. 38.071, § 2(b) (Vernon Supp.2000). Appellant argues that even this new procedure denied him "full and effective" cross-examination of the complaining witness.

The constitutional right to confrontation is not limited to a narrow and rigid traditional in-court confrontation. The United State Supreme Court has stated that: "The Confrontation Clause reflects a *preference* for face-to-face confrontation at trial, (citation omitted), a preference that 'must occasionally give way to considerations of public policy and the necessities of the case.'" *Maryland v. Craig,* 497 U.S. 836, 849, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666 (1990) (emphasis in original). It has also recognized that: "A State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id.* at 853, 110 S.Ct. at 3167.

■ The Confrontation Clause does not guarantee a criminal defendant an *absolute* right to a face-to-face meeting with the witnesses against him at trial; its purpose is to ensure that admitted evidence is reliable. *Id.* at 846, 110 S.Ct. at 3160. A number of factors are important in accomplishing this purpose including a face-to-face presence, administration of an oath or other truth telling qualification, cross-examination, and an opportunity for the jury to observe the witness's demeanor. *Id.*

In the case before us, a face-to-face confrontation was provided in the pre-trial hearing, first in the courtroom, and then by closed circuit television in the judge's chambers. An oath was administered in court, after the trial court satisfied itself as to the witness's understanding of truth telling. The jury had an adequate opportunity to observe the complaining witness's demeanor, both in the pre-indictment video interview, and the cross-examination video which occurred contemporaneously with the trial. Moreover, an opportunity for cross-examination was provided, albeit by written questions propounded by Appellant's counsel. The cross-examination questions were asked by the same interviewer and in the same setting as the

original videotaped interview. Accordingly, all of the factors for "reliability and rigorous adversarial testing" were present. The only question is whether the limitation to written versus oral cross-examination left Appellant at such a disadvantage as to effectively deny him his right to confrontation in spite of the presence of all of the other confrontation criteria.

■ There can be little doubt that as a general proposition in-person oral cross-examination is preferred to the rather sterile alternative of another questioner asking an attorney's written questions. The latter lacks spontaneity, the opportunity for "give and take," and the immediate follow-up that are the essence of effective traditional cross-examination. However, when there are extenuating circumstances the "preferred" method of cross-examination may not be attainable. Such extenuating circumstances are present in this case—the complaining witness's age, immaturity and fragile emotional state.

The fact that the complaining witness in this case was only seven years old at the time of trial, and five years old at the time of the alleged offense is of more than minor significance. What may be appropriate cross-examination for an older complaining witness may not be appropriate for a child of tender years. Because of the age of this complaining witness, the procedure used was the most effective means of cross-examination available. To have brought her into a courtroom would not have been good for the child, and probably would have led to little or no effective cross-examination. During the pre-trial hearing the child was virtually incapable of responding to the weighty details of the subject matter of this case. However, in the more comfortable setting utilized by the interviewer she responded much more willingly to all questions including cross-examination.

Appellant argues that the whole procedure was ineffective and a waste of time. We have viewed the videotape of his cross-examination, and we disagree. Appellant was allowed to ask virtually every question he propounded[4], with probably more meaningful responses than he would have received from a terrified and non-responsive seven-year-old child in the intimidating environment of a courtroom filled with lawyers, the accused, court personnel and the jury. Whatever disadvantage this procedure may have imposed upon Appellant, if indeed there was any, was minor when compared to the potential for undue emotional and psychological harm to the child as found by the trial court. Taken as a whole, we find that the procedure provided by Article 38.071 section 2, and as applied by the trial court did not violate Appellant's right to confrontation under the

---

4. Appellant complains in Footnote 9 of Appellant's Brief to the trial court striking his Question 2: "Who told you to say Ty had sex with you?" The State raised two objections—leading and assumes facts not in evidence. This is leading in a sense. It does imply that someone told her to say Ty had sex with her. Rule 11(c) of the Texas Rules of Evidence states that *"Ordinarily* leading questions should be permitted on cross-examination." We believe this to be one of those unordinary cases where the trial judge's discretion in dealing with a seven-year-old complaining witness should not be disturbed absent a showing of abuse of discretion and harm to the defendant's case. There was no other evidence that this witness had been told to say anything by anyone. In any event virtually the same inquiry was allowed in a less suggestive manner in Question Number 6: "Do you actually remember this or did someone tell you what to say?" If there was any error, it would have been harmless since essentially the same inquiry was made and answered. Moreover, this issue is really one of admissibility, not a "confrontation" issue since the same question could have been asked in open court.

Sixth Amendment to the United States Constitution or Article 1, section 10 of the Texas Constitution. Appellant's first issue is overruled.

### THE PHYSICIAN'S TESTIMONY

In his second issue, Appellant complains of the trial court's admission of the testimony of the examining physician as to what she was told by A.G.'s grandmother, Shirley Gober. At trial, Coffman was permitted, over Appellant's hearsay objection, to relate what she had been told by Gober about A.G.'s condition. Coffman then testified to what A.G. had told her without objection from Appellant. A.G. was not present when Coffman interviewed Gober and Gober was also not present when A.G. spoke with the doctor. The statements given by the two, and as related by Coffman, were substantially similar.

 The State offered Coffman's testimony regarding the statements made by Gober as an exception to the hearsay rule, relying on TEX.R.EVID. 803(4)[5]. The declarant upon whose statements Coffman was relying was not Gober but A.G. Hearsay on hearsay is not contemplated by Rule 803. A statement made by a declarant for the purpose of obtaining medical treatment is inherently reliable because the declarant knows that a false statement may result in misdiagnosis or mistreatment. *White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992). Unlike facts related by the patient herself, facts related by a third party whose motives may be suspect do not bear the same indicia of reliability. Accordingly, we hold that the trial court erred in permitting Coffman to testify as to statements made by Gober. However, where testimony is admitted over objection and the same testimony or testimony to the same effect is thereafter admitted without objection, the objection in the first instance is waived. *Davis v. State*, 516 S.W.2d 157, 162 (Tex. Crim.App.1974). Such is the case here. Appellant's second issue is therefore overruled.

The judgment of the trial court is affirmed.

---

**5.** Rule 803(4) states that "[s]tatements made for the purpose of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to the diagnosis or treatment" are not excluded by the hearsay rule, even though the declarant is available as a witness. TEX.R.EVID. 803(4).