Tirey Glen SMITH, Appellant,

v.

The STATE of Texas.

No. 1856–00.

Court of Criminal Appeals of Texas.

Nov. 28, 2001.

Kenneth Nash, Tyler, for Appellant.

Edward J. Marty, Assistant District Attorney, Tyler, for the State.

## OPINION

KEASLER, J., delivered the unanimous opinion of the Court.

At Tirey Smith's trial for aggravated sexual assault of a child, the child did not testify. Instead, the trial court admitted into evidence two videotaped interviews of

the child. Smith argues that the admission of the tapes violated his right to confrontation. We conclude that the Court of Appeals failed to conduct the correct legal analysis, and we remand the case to that court for further review.

### Factual Background

In February, 1997, 5–year–old Amber was living with her grandmother when she told her grandmother that Smith, her mother's boyfriend, had "sexed" her, and that her mother had helped. After hearing this, Amber's grandmother took Amber to the doctor, and Amber repeated the allegation. The doctor referred the case to Child Protective Services. The next day, Lea Proudfoot, an investigator at the Children's Advocacy Center, interviewed Amber and videotaped the interview.

Smith's trial did not occur until two years later, in March of 1999. Before trial, the State moved to have Amber declared unavailable and to admit, in lieu of Amber's testimony, the videotaped interview. The day before trial, the parties attempted unsuccessfully to have Amber testify about the events surrounding the offense. On the morning of the trial, in compliance with Art. 38.071 of the Code of Criminal Procedure, the trial court ordered Proudfoot to interview Amber again, this time solely to ask her written questions from Smith's defense counsel. This interview was also videotaped.

At trial, Amber did not testify. Instead, the trial court admitted both videotaped interviews over Smith's objection. The

jury convicted Smith of aggravated sexual assault and sentenced him to life in prison.

### Procedural History

Smith appealed arguing, among other things, that the admission of the videotapes into evidence denied him his constitutional right to confrontation. The Court of Appeals disagreed. The court held that Art. 38.071 protected Smith's right to confrontation by allowing him to propound written interrogatories to Amber.[1] Relying on *Maryland v. Craig*,[2] the court reasoned that, while there is a preference for face-to-face confrontation, the State's interest in the well-being of child abuse victims can outweigh the defendant's right to confrontation.[3] In this case, the court concluded, Smith's right to confrontation was not violated.

We granted Smith's petition for discretionary review to address this decision.

### Analysis

We begin with the leading Supreme Court cases in this area: *Maryland v. Craig, Coy v. Iowa*,[4] and *Idaho v. Wright*.[5] In each of these cases, the defendant was charged with a sex crime against a child, and in each case, the trial judge attempted to protect the child while still ensuring that the defendant's right to confrontation was met. In *Craig*, a screen was put up between the child and the defendant during the child's testimony. In *Coy*, a closed-circuit television system was used during the child's testimony. In *Wright*, a doctor testified to statements the child had made to him about the offense. Although

---

1. *Smith v. State*, 2000 WL 1470147 at *4 (Tex.App.—Tyler 2000).

2. 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

3. *Smith*, 2000 WL 1470147 at *6:

4. 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

5. 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

the cases are similar at first glance, there is a significant factual distinction between them: In both *Craig* and *Coy,* the child victim testified at trial, while in *Wright,* the child did not. True, both situations involve Confrontation Clause issues, but the analysis is quite different. As the Supreme Court explained in *White v. Illinois,*[6]

> *Coy* and *Craig* involved only the question of what *in-court* procedures are constitutionally required to guarantee a defendant's confrontation right once a witness is testifying. Such a question is quite separate from that of what requirements the Confrontation Clause imposes as a predicate for the introduction of out-of-court declarations.

■ In this case, the Court of Appeals focused on the State's need to protect Amber in concluding that the trial court did not violate Smith's right to confrontation.[7] The appellate court relied on *Craig* for this analysis.[8] But Amber did not testify at trial. Rather, the State admitted hearsay into evidence, specifically, Amber's videotaped interviews with Proudfoot. The proper Confrontation Clause analysis is the one set forth in *Wright,* not *Craig.*[9] The Court of Appeals erred in analyzing this case under *Craig.*

■ Under *Wright,* the Court of Appeals should have instead considered whether the videotapes bore sufficient indicia of reliability.[10] This can be shown either by demonstrating that the tapes fall within a "firmly rooted" hearsay exception or that they are supported by "particularized guarantees of trustworthiness."[11]

We will remand this case for the Court of Appeals to consider Smith's claim pursuant to *Wright.* Since the tapes were admitted under Art. 38.071, the court should first consider whether that statute constitutes a firmly rooted hearsay exception. If not, *Wright* dictates that the evidence is presumptively inadmissible and must be excluded absent a showing of particularized guarantees of trustworthiness.[12]

■ Particularized guarantees of trustworthiness must be shown from the totality of the circumstances surrounding the making of the statement, without considering other evidence admitted at trial.[13] Some factors which may be considered in this analysis include the following: (a) the spontaneity of the statement;[14] (b) whether the statement is consistently repeated;[15] (c) the mental state of the declarant;[16] (d) the use of terminology unexpected of a child of similar age;[17] (e) a

**6.** 502 U.S. 346, 358, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (emphasis in original).

**7.** *Smith,* 2000 WL 1470147 at *6–7.

**8.** *Id.*

**9.** *See Schaal v. Gammon,* 233 F.3d 1103 (8th Cir.2000).

**10.** *See Wright,* 497 U.S. at 815–17, 110 S.Ct. 3139.

**11.** *See Id.*

**12.** *Id.* at 815, 110 S.Ct. 3139.

**13.** *Id.* at 819, 110 S.Ct. 3139.

**14.** *Id.* at 821, 110 S.Ct. 3139 (*citing State v. Robinson,* 153 Ariz. 191, 735 P.2d 801, 811 (1987)).

**15.** *Id.*

**16.** *Id.* (*citing Morgan v. Foretich,* 846 F.2d 941, 948 (4th Cir.1988)).

**17.** *Id.* (*citing State v. Sorenson,* 143 Wis.2d 226, 421 N.W.2d 77, 85 (1988)); *see also Webb v. Lewis,* 44 F.3d 1387, 1392 (9th Cir. 1994).

lack of motive to fabricate;[18] (f) the giving of an age-appropriate oath before the statement is made;[19] (g) the presence of the defendant during the interview;[20] (h) the presence of the child's parent during the interview;[21] (i) the relationship of the declarant to the interviewer;[22] (j) the length of time between the child's first outcry and the making of the statement;[23] (k) the quality of the tape;[24] and (*l*) the method by which the interview is conducted, including whether the questions are leading, whether the child is given a break when needed, and whether written interrogatories from the defendant are submitted and answered. As the Supreme Court stated in *Wright*, "[t]hese factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors."[25]

We vacate the judgment of the Court of Appeals and remand this case to that court for proceedings consistent with this opinion.

18. *Id.* at 821–22, 110 S.Ct. 3139 (*citing State v. Kuone*, 243 Kan. 218, 757 P.2d 289, 292–93 (1988)).

19. *Schaal*, 233 F.3d at 1108.

20. *Id.*

21. *Id.*

22. *Id.*

23. *Webb*, 44 F.3d at 1392.

24. *Schaal*, 233 F.3d at 1108.

25. *Wright*, 497 U.S. at 822, 110 S.Ct. 3139.