# NO. 12-08-00061-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BILL CRAMER,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA  COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Bill Cramer appeals from his convictions for three counts of indecency with a child, two counts of aggravated sexual assault, and four counts of sexual assault. In four issues, Appellant argues that the evidence is insufficient to support the verdicts, that the trial court erred in allowing a police officer to testify about a child's statements to him, and that the trial court erred by sustaining the State's objection to the admission of certain physical evidence. We affirm.

### BACKGROUND

On June 21, 2006, eighteen year old S.S.'s ex–boyfriend came to her house and delivered an envelope to S.S.'s mother, Sherry. S.S. tried to take the envelope from Sherry, but she was unable to do so. Sherry reviewed the contents of the envelope and learned that S.S. had had a sexual relationship with her ex–boyfriend. S.S. confirmed the relationship but told her mother it was not the first time she had had sexual intercourse. After further conversation, she told her mother that Appellant, her stepfather, had sexually assaulted her when she was a sophomore in high school.

1

Six days later, after being encouraged to do so by an Army recruiter who was helping her join the service, S.S. reported the assault to the police. After that, S.S.'s father contacted Appellant's ex–wife, Cecelia, and told her about the allegations. This gave rise to a painful realization for Cecelia as she recalled that the daughter she had with Appellant, C.C., had not wanted to visit him and that she had returned from one visit with Appellant with her genital and anal areas reddened and "raw." At the time, C.C. said that Appellant had caused the injuries inadvertently with a washcloth while bathing her, and Cecelia had not suspected abuse. After hearing from S.S.'s father, Cecelia asked C.C., then a teenager, if Appellant had assaulted her. C.C. did not say that she had been assaulted, but Cecelia had her examined and filed a report with the police.

In December 2006, an Angelina County grand jury indicted Appellant, alleging that he had committed three counts of indecency with a child (with C.C. and S.S. as the victims), two counts of aggravated sexual assault (with C.C. as the victim), and four counts of sexual assault (with S.S. as the victim). In September 2007, the State moved to amend the indictment, altering only the alleged dates and manner in which it alleged that Appellant committed the aggravated sexual assaults.

A trial was held in 2008. Appellant pleaded not guilty. The jury found him guilty as charged and assessed punishment at five years for each of the indecency counts, twenty–five years for each of the aggravated sexual assault counts, and ten years for each of the sexual assault counts. The trial court ordered that the sentences be served concurrently. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, Appellant argues that the evidence is legally and factually insufficient to support the verdicts.

### Standard of Review

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim.

2

App. 2004); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

While legal sufficiency review is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution requires further review of the factual sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex. Crim. App. 1996). Factual sufficiency review differs from legal sufficiency review only slightly. *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). In a factual sufficiency review, we review the evidence without the light most favorable to the verdict and we are authorized, "albeit to a very limited degree," to disagree with the jury's resolution of contested factual issues. *See id.*; *Watson v. State*, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006). In a review of the factual sufficiency of the evidence, we will conclude that the evidence is insufficient only if the great weight and preponderance of the evidence contradicts the jury's verdict or the verdict is clearly wrong and manifestly unjust. *See Rollerson*, 227 S.W.3d at 724; *Watson*, 204 S.W.3d at 417.

Under either standard, our role is that of appellate review, and the fact finder is the principal judge of the weight and credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

As alleged in the indictment, the State was required to prove that Appellant engaged in sexual contact with a child younger than seventeen years of age and not his spouse (indecency with a child, TEX. PENAL CODE ANN. §§ 21.11(a), (b–1) (Vernon Supp. 2009));[1] that Appellant intentionally or knowingly caused the penetration of the anus or sexual organ of another person under the age of seventeen and not his spouse (sexual assault, TEX. PENAL CODE ANN. §§ 22.011(a)(2)(A), (c)(1), (e)(1) (Vernon Supp. 2009)); and that Appellant intentionally or

---

[1] These statutes have been amended by the legislature since the trial, but the changes do not affect our analysis. For ease of reference, we cite the most recent versions of the statutes.

knowingly caused the penetration of the anus or sexual organ of a person younger than fourteen years of age (aggravated sexual assault, TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2009)).

**Analysis**

Appellant argues that there is no physical evidence that S.S. was assaulted and that her testimony is internally inconsistent and unbelievable. He also argues that there is no conclusive physical evidence that C.C. was assaulted, that she only said that she had been assaulted after the indictment was returned, and that a witness's testimony about her outcry should not have been admitted and should be afforded little weight.

We begin with the observation that the uncorroborated testimony of a child witness is sufficient to support a conviction for sexual assault or for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (Vernon 2005); *Satterwhite v. State*, 499 S.W.2d 314, 315 (Tex. Crim. App. 1973); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd). Both of the young women in this case testified about the assaults and acts of indecency with a child that Appellant committed against them.

The assaults and acts Appellant committed against S.S. were against her will. But over time, the assaults became less like an attack by a stranger and more like a sexual relationship. For example, S.S. testified that Appellant would stimulate her with his hand and insist that she have an orgasm before he would stop. And while she sought to avoid having sexual relations with Appellant, S.S. did initiate sexual contact with Appellant to avoid having to perform other acts or in an effort to shield another child.

Her testimony about the nature of their relationship was corroborated by several witnesses who knew both of them. S.S.'s aunt testified that she was dropping her daughter off at school one day when she was stuck behind a pickup truck in which the occupants were "intimately kissing." She had to leave because she had to drop another daughter off at another school and was concerned that she would be late. It was then that S.S. slid out of the passenger side of the truck. Appellant was the other occupant of the truck. Additionally, one of Appellant's coworkers testified about times when he observed S.S. sitting on Appellant's lap in a pose he thought was inappropriate and recalled a wrestling incident between Appellant and S.S.

4

during which he thought the two were overly affectionate.  The friend's wife, who was present for the wrestling incident, described it as "quite flirtatious" and almost like "courting" or "foreplay."  She also testified that the next morning, S.S. brought Appellant his breakfast and she sat in his lap with her legs over the side of the chair.  She thought it appeared inappropriate and more like "couple behavior" than "father/daughter" behavior.

Further, a former boyfriend of S.S. testified that Appellant wanted to meet him before he took S.S. to the prom and that Appellant's attitude towards him seemed more like that of a romantic rival than a concerned father.  The boyfriend provided the prosecution with photographs of Appellant and S.S. on prom night.  The pictures were introduced into evidence and show S.S. in her dress and Appellant standing behind her with his hands low on her hips.  The former boyfriend thought the placement of Appellant's hands was overly affectionate.  Finally, in terms of corroboration generally, S.S. was able to describe the physical attributes of Appellant's groin area.  There was nothing remarkable about her description, but C.C.'s mother, Appellant's ex–wife, gave a similar description.

With respect to C.C., there was medical evidence that supported her testimony that Appellant penetrated her anus.  Specifically, she bled from this area of her body as a small child.  She was evaluated by several doctors at the time, and no satisfactory diagnoses were rendered.  At one examination she had a skin tag on her rectum.  A second skin tag was detected when she was evaluated by a nurse after S.S.'s report of the assault.  There was testimony that skin tags could be the result of injury to the rectum that could come from a sexual assault.  The nurse also observed that the dilation of C.C.'s anus and her sphincter response were abnormal.  She testified that these responses were consistent with sexual assault.  There was conflicting testimony as to whether the bleeding stopped after C.C. stopped visiting Appellant.  She and her mother testified that it did, although she continued to seek treatment.

There was also evidence contrary to the verdict.  Appellant testified that he did not assault or touch the girls.  Additionally, S.S.'s mother did not believe S.S.'s allegations and she, along with other witnesses, testified about the logistical difficulty of such acts having occurred.  For example, the house where most of the assaults on S.S. allegedly occurred was relatively small and witnesses, including S.S., testified that one could easily hear what was going on in

other parts of the house. Furthermore, some of the described assaults occurred in unlikely circumstances, including when S.S.'s mother was in the shower or in the next room cooking dinner. Finally, none of the medical professionals who examined C.C. around the time she said she was assaulted had diagnosed her with having been sexually assaulted or made reports to the authorities after examining her.[2]

With respect to the outcry witness, Appellant argues in the third issue that this testimony should not have been admitted. We address the admissibility of the outcry statement in the next section of our opinion. In terms of the sufficiency of the evidence, we think the outcry had little effect on the verdict. The outcry in this case was unusual because C.C. told a Texas Ranger that Appellant committed acts for which Appellant had already been indicted. However, Appellant's argument that C.C.'s testimony was a false memory or part of an attempt to frame him was not damaged by the unusual outcry so close to trial. If the memory was false or part of a conspiracy, that process was well along by the time the outcry occurred, and we think it unlikely that the jury considered the outcry statement to be different from or somehow corroborative of C.C.'s testimony at trial.

After reviewing all of the evidence, we conclude that a rational jury could find the essential elements of the offenses beyond a reasonable doubt and that the evidence is legally sufficient to support the verdict. Both young women testified about the assaults. Their testimony, if believed, proved each of the essential elements of the charged offenses. There is substantial corroborative evidence, and while not uncontroverted, a rational jury could credit the testimony of C.C. and S.S.

With respect to the factual sufficiency of the evidence, we hold that the great weight and preponderance of the evidence does not contradict the jury's verdict and that the verdict is not clearly wrong and manifestly unjust. The resolution of this case turned almost entirely on an evaluation of the credibility of witnesses and the weight to be afforded to each witness's

---

[2] The specialist who examined C.C. testified that he was obligated to report sexual abuse when his examination "absolutely indicates sexual abuse." He testified that when he examined her, there was only one skin tag. While that could be consistent with sexual abuse, he testified that he did not report it because there could be other explanations. He testified that a second skin tag, which indicated an additional injury, would be very abnormal unless it was connected with specific diseases that C.C. did not have.

6

testimony. The jury is in the best position to make that determination, and we hold that the evidence is factually sufficient.

We overrule Appellant's first and second issues.


<u>**OUTCRY TESTIMONY**</u>

In his third issue, Appellant argues that the trial court erred by allowing the testimony of Texas Ranger Peter Maskunas as to C.C.'s oral statement to him about Appellant's actions.

**<u>Applicable Law</u>**

Hearsay statements, while generally inadmissible, may be admitted under specific conditions when public policy supports their use, and the circumstances surrounding the making of those statements support their reliability. *See **Martinez v. State***, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). The legislature has determined that one such situation is the outcry, or self-reporting, statement of a child victim of sexual or physical abuse. ***Id***. at 810–11; *see* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2009).

However, the use of such out of court statements is carefully limited. Only those statements made to a person eighteen years of age or older qualify, and then only if the child was twelve or younger when the abuse occurred. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, §§ 1, 2(a)(2). The state must provide adequate pretrial notice to the defendant of its intent to introduce the child outcry statement, and it must provide the name of the outcry witness and a summary of the hearsay statement. ***Id***. § 2(b)(1). Furthermore, the trial court must first determine, outside the presence of the jury, that the statement is reliable "based on the time, content, and circumstances of the statement," and the child must testify at trial or be available to testify. ***Id***. §§ 2(b)(2), 2(b)(3).

Generally, we review a trial court's ruling on the admission of evidence for an abuse of discretion. *See **Casey v. State***, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); ***Montgomery v. State***, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). Specifically, a trial court's determination that an outcry statement is admissible under article 38.072 is reviewed for an abuse of discretion. *See **Nino v. State***, 223 S.W.3d 749, 752 (Tex. App.–Houston [14th Dist.] 2007, no pet.); *see also **Garcia v. State***, 792 S.W.2d 88, 91–92 (Tex. Crim. App. 1990).

7

## Analysis

Appellant makes two arguments. First, he argues that Ranger Maskunas was not a proper outcry witness because Appellant had already been indicted for the offenses at the time she made the outcry to Maskunas. Second, Appellant argues that the outcry is "unreliable as a matter of law."

With respect to his first argument, we agree with Appellant that the sequence of events in this case is unusual. Many criminal investigations begin with the victim's making a report of a crime. An investigation follows, an indictment is returned or an information filed, and then the case proceeds to trial. In this case, there was an investigation that included an outcry from C.C. to her mother for the offenses of indecency with a child. C.C. never told anyone that Appellant had penetrated her anus, but the grand jury indicted him for two counts of aggravated sexual assault, alleging that he penetrated her anus with his finger and with his sexual organ. Then, after the indictment but prior to trial, C.C. disclosed to Maskunas that Appellant had penetrated her anus with his sexual organ. The State amended the indictment to allege in both counts that Appellant had penetrated her anus with his sexual organ and amended the dates on which the alleged offenses occurred.

Several lengthy conversations occurred between the trial court, the district attorney, and Appellant's counsel on this matter. Appellant argued that it was a "reasonable assumption that [C.C.] made these [outcry] statements to someone else as to these specific allegations." Accordingly, he argued that Maskunas could not have been the first person to whom C.C. disclosed these occurrences. The district attorney, without stating that this was the case, postulated that the grand jury returned its indictment based on the medical information about C.C., the rectal bleeding that she suffered, and the information about the assaults on S.S.

The district attorney represented that there was no other person to whom C.C. had confided about the aggravated sexual assaults, and the evidence at trial bore that out. C.C. and her mother testified that C.C. did not talk about the assaults, and no other witness was revealed whom C.C. had told about the aggravated sexual assaults. Accordingly, we hold that the trial

8

court did not abuse its discretion by allowing the outcry testimony simply because it came after the indictment had been returned. Article 38.072 contains several specific procedural and substantive requirements including that the witness be the first person to whom the child first made a statement about the offense. Maskunas was that witness according to the evidence at trial.

With respect to Appellant's argument that Maskunas's testimony was unreliable as a matter of law, he argues specifically that it was very convenient for the State that an outcry witness appeared in the months before trial, that the description was overly precise, and that the "recognized guidelines for forensic interviews" were not followed.

Our analysis of whether the outcry statement was reliable in "time, content, and circumstances" is based on "the time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances surrounding the making of that statement." *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2); **Broderick v. State**, 89 S.W.3d 696, 699 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd). Factors a trial court may consider in assessing the reliability of a child's statement include

(1) whether the child victim testifies at trial and admits making the out of court statement;

(2) whether the child understands the need to tell the truth and has the ability to observe, recollect, and narrate;

(3) whether other evidence corroborates the statement;

(4) whether the child made the statement spontaneously in her own terminology or whether evidence exists of prior prompting or manipulation by adults;

(5) whether the child's statement is clear and unambiguous and rises to the needed level of certainty;

(6) whether the statement is consistent with other evidence;

(7) whether the statement describes an event that a child of the victim's age could not be expected to fabricate;

(8) whether the child behaves abnormally after the contact;

(9) whether the child has a motive to fabricate the statement;

(10) whether the child expects punishment because of reporting the conduct; and

(11) whether the accused had the opportunity to commit the offense.

9

*Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.–Dallas 1990, pet. ref'd) (citing **Buckley v. State**, 758 S.W.2d 339, 343–44 (Tex. App.–Texarkana 1988), *aff'd*, 786 S.W.2d 357 (Tex. Crim. App. 1990)). These factors are not exclusive, and "courts have considerable leeway in their consideration of appropriate factors." **Smith v. State**, 61 S.W.3d 409, 412–13 (Tex. Crim. App. 2001).

Applying these factors, we hold that the trial court did not err. Several factors weigh in favor of admissibility. The child testified at trial that she made the statement, and she appeared to understand the need to tell the truth. She had the ability to observe and narrate, and other evidence–specifically the medical evidence and her seemingly irrational fear of her father– corroborated her story. The child's statement, while brief, is clear and unambiguous, and it is consistent with the other evidence. The child behaved abnormally after the contact, and the accused had the opportunity to commit the offense.

On the other hand, several factors weigh against admissibility. With respect to the fourth factor, reasonable minds could differ as to the spontaneity of the statement and the amount of prompting that preceded it. It was plain, at least to the district attorney, that he could not proceed on the counts relating to the sexual assault of C.C. without her testimony that they occurred. Furthermore, Maskunas's testimony as to the questioning he used, along with the lack of recording of the session, leads to an incomplete picture. Maskunas testified that when conducting an interview such as this one, he allowed the child to take the interview in the direction "she wanted to go." However, he also testified that his purpose in his interview with C.C. was to get to know her and also to determine "what information she was willing to talk about." When asked if he asked leading questions, Maskunas said, "Not to my knowledge." So, with respect to this factor, there is not evidence that Maskunas suggested anything to the victim, but neither is there the kind of certainty on this issue that there would be with a recording of the interview.

Furthermore, though not presented before the trial court made its ruling, Maskunas testified that when he asked C.C. what she meant by anal intercourse, "she described it as an act of a man placing his penis in the rectum of a female for sexual pleasure." Although he described

10

it as a "quotation," it is not clear if these were the exact words C.C. used or his own paraphrase. If it is a direct quotation, it would be an unusual way for a young teenager to describe that act. Indeed, in her own testimony, C.C. described the act as Appellant putting his "private part" in her "bottom."

It cannot be said that the child could not have fabricated the act she described. And while there is no evidence that the child had a motive to fabricate, there was evidence of considerable tension between her parents. The child had been threatened with consequences if she told of the event. But it is not clear if this makes the actual outcry more or less reliable, as she had other opportunities to self–report, including counseling sessions in which she would have been able to disclose this abuse.

Appellant's argument addresses most directly the fourth factor, that is whether the statement was prompted or manipulated by Maskunas. Maskunas had a plausible explanation for why the statement was not recorded. He testified that he did not expect C.C. to divulge this information to him. Appellant argues that this is not the case, and that Maskunas's notes show that he was there to "discuss the history of abuse by [C.C.'s] father, [Appellant.]" This observation is slightly off the mark to the extent that C.C. had already disclosed incidents that supported the charged offense of indecency with a child. But, when coupled with Maskunas's answer about leading questions, and the fact that Appellant had been indicted for the aggravated sexual assault and the State needed her testimony, this factor weighs against the reliability of the statement.

On the other hand, there is no evidence that Maskunas prompted or manipulated the statement, and most of the other indicia of reliability weigh in favor of admitting the outcry statement. Accordingly, we hold that the trial court did not abuse its discretion by allowing C.C.'s statement to Maskunas to be admitted. We overrule Appellant's third issue.

### ADMISSION OF EVIDENCE

In his fourth issue, Appellant argues that the trial court erred when it did not allow into evidence the contents of the envelope delivered by S.S.'s ex–boyfriend to her mother, the envelope that prompted the investigation that led to this case being brought.

11

The State objected to the evidence on the grounds that the evidence was either hearsay or irrelevant, that it violated the right to confront witnesses, and that the prejudicial value of the evidence outweighed any probative value. The trial court sustained the State's objection, and the disputed evidence was not admitted at trial. Appellant did not make an offer of proof of the evidence he had sought to admit.

To preserve error in the exclusion of evidence, a party must make a sufficient offer of proof and obtain a ruling. TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1(a)(1)(A); *Hernandez v. State*, 127 S.W.3d 206, 216 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd). Error may not be predicated upon a ruling that excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which the questions were asked. TEX. R. EVID. 103(a)(2); *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998); *Hernandez*, 127 S.W.3d at 216. An offer of proof must show that the excluded evidence is relevant and admissible and must show the facts that a defendant wishes to prove. *See Edwards v. State*, 178 S.W.3d 139, 146 (Tex. App.–Houston [1st Dist.] 2005, no pet.); *Railsback v. State*, 95 S.W.3d 473, 478 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd). An offer of proof must be specific enough to enable the reviewing court to determine the admissibility of the disputed evidence, though only a short factual recitation of what the testimony would show may suffice. *See In re N.R.C.*, 94 S.W.3d 799, 806 (Tex. App.–Houston [14th Dist.] 2002, pet. denied).

In this case, there is literally nothing for us to review. Neither the Appellant's discussion of the evidence or the State's brief description[3] of it are sufficient for us to form more than a vague surmise of what this evidence might be. Accordingly, Appellant has not preserved this issue for our review, and we overrule Appellant's fourth issue.[4]

---

[3] In its brief, the State lists the six exhibits and describes them as note, letters, cards, and a hotel room key and describes who the various communiqués are to and from. The State does not describe the contents of the written material.

[4] In some of the cases before this court, it does happen that items that are in the appellate record, that is admitted at trial and requested as part of the appellate process, nevertheless do not make it into the record filed in this court. This happens most often with items of physical evidence, which court reporters often retain. Because of this, and because the record is vague as to where these pieces of evidence went after the trial court determined they were inadmissible, we instructed the clerk of our court to inquire of the court reporter if these items were in the record maintained at the trial court. They are not. Furthermore, we note that the State argued in its brief that this

## DISPOSITION

Having overruled Appellant's four issues, we ***affirm*** the judgment of the trial court.


## SAM GRIFFITH
Justice


Opinion delivered November 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)

---

issue was not preserved because there had not been an offer of proof and that the exhibits were not in the appellate record. Appellant filed a reply brief and responded to issues raised by the State in the fourth issue, but did not respond to the preservation argument.