NUMBERS  13-10-00140-CR

             13-10-00141-CR

             13-10-00142-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI -
EDINBURG 


                                                                                                                     


 

MIGUEL QUINONES III,                                                           
Appellant,

 

v.

 

THE STATE OF TEXAS,                                                         
 Appellee.

                                                                                                                     
  

 

On appeal from the 130th
District Court 

of Matagorda County,
Texas.

                                                                                                                     


 

Memorandum Opinion[1]

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza

Memorandum Opinion by
Justice Rodriguez

 

 

A jury convicted appellant Miguel
Quinones III of four counts of aggravated sexual assault on M.L.,
a child, see Tex.
Penal Code Ann. '
22.021 (West
Supp. 2010), and one count of indecency with a child.[2] 
See id. ' 21.11(a)(1) (West
Supp. 2010).  Quinones was sentenced to life in prison and assessed a $10,000
fine for each aggravated sexual assault conviction, and twenty years in prison
plus a $10,000 fine for the indecency with a child conviction.  The judge
ordered that the sentences be served consecutively.  By five issues, Quinones
contends that the trial court erred in:  (1) denying his motion for
continuance; (2) giving the jury a partial definition of reasonable doubt; (3)
admitting testimony regarding another offense; (4) admitting testimony of two
outcry witnesses; and (5) disqualifying two defense witnesses during the
punishment phase of the trial.  We affirm.

I.  Motion For Continuance

By his first issue, Quinones contends
that the trial court erred in denying his motion for continuance, which was
based on the prosecutor's disclosure of the identity of a medical witness and
records allegedly containing exculpatory information on the eve of trial. 
Quinones argues that this was unfair because his defense counsel needed more
time to prepare for an effective cross-examination of the State's witness and
to investigate the exculpatory information provided by the State.

A. 
Standard of Review and Applicable Law

We review a trial court's ruling on a
motion for continuance under an abuse-of-discretion standard.  See
Heiselbetz v. State, 906 S.W.2d 500, 511-12 (Tex. Crim. App. 1995) (en
banc); see also Tex. Code Crim.
Proc. Ann. art. 29.06(6) (West 2006) (providing that the sufficiency of
a motion for continuance shall be addressed to the "sound discretion"
of the court and "shall not be granted as a matter of right"). 
"[I]n order to show reversible error predicated on the denial of a pretrial
motion for continuance, a defendant must demonstrate both that the trial court
erred in denying the motion and that the lack of a continuance harmed
him."  Gonzales v. State, 304 S.W.3d 838, 843 (Tex. Crim. App.
2010); see Tex. Code Crim. Proc.
Ann. art. 29.03 (West 2006) ("A criminal action may be continued on
the written motion . . . of the defendant, upon sufficient cause
shown . . . .").  If error is established, a defendant must
still show "specific prejudice to his defense" to establish that the
trial court abused its discretion in refusing to grant a continuance.  See
Heiselbetz, 906 S.W.2d at 511-12.  Such prejudice includes unfair surprise,
inability to effectively cross-examine witnesses, and inability to elicit
crucial testimony from potential witnesses.  Janecka v. State, 937
S.W.2d 456, 468 (Tex. Crim. App. 1996) (en banc) (per curiam). 

B. 
Background

Quinones filed a motion for continuance on
February 5, 2010, and an amended motion for continuance on February 8, 2010,
the first day of trial.  Quinones's motion was based on the State's January 26
through February 5, 2010 production of medical records, therapy notes,
information regarding M.L.'s school counselor, and Child Protective Service (CPS)
reports.  In his motion, Quinones acknowledged that the State did not have
these items in their possession at the January 21, 2010 pre-trial conference
and that the State did not believe these items existed at that time.  He
further acknowledged that once the State received the items, it promptly faxed
or forwarded copies of the records to Quinones's counsel.  Quinones argued that
he had been unfairly surprised by the existence and late disclosure of the
records.

In his motion, Quinones also argued that
"without more time to fully investigate, he would be unable to effectively
cross-examine the State's witnesses," in violation of the Sixth
Amendment.  See U.S. Const.
amend. VI; Crane v. Kentucky, 476 U.S. 683, 690-91 (1986).  Quinones
complained, in relevant part, that without time to fully investigate the new
evidence, he would suffer specific prejudice by being unable to effectively
cross-examine witnesses regarding the following:

a.         Any treatment, therapy, outcries or previous
allegations, or allegations of sexual abuse which could inculpate other parties
which only came to light with CPS reports received on the Friday before
Monday's trial[;]

 

b.         The medical examination of [M.L.] which was
conducted specifically because of allegations of sexual abuse[;]

 

. . . .

 

d.         The medical report states that another child
was accused of holding [M.L.] down with tape while being abused—which also is alleged against the Defendant. 
Defendant has not had the opportunity to fully investigate this claim.[[3]]

 

After hearing arguments on the motion,
the trial court concluded that there was no evidence that the State intentionally
withheld any information; thus, there was no Brady issue.  The trial
court later denied the motion's remaining "fully-investigate,
cross-examination" argument "to the extent that [it was] a request to
go fish for the information and get two weeks."  In denying the motion,
the trial court advised Quinones that he would have the "ability to come
back with a specific instance where [he needed] time," but "at this
point, it's too general for [the court] to grant at this late date."

C. 
Analysis

On appeal, Quinones's complaint focuses
on the medical records of Henri Ann Nortmann, M.D., a pediatrician who saw M.L.
three times prior to the events upon which Quinones's conviction is based, and
the CPS report reviewed by Mindy Graber, a forensic interviewer at the
Children's Advocacy Center.[4] 
On appeal, Quinones contends that the exculpatory evidence in these
records included information about other possible causes of M.L.'s complaints
about pain in her "privates," a possible alternate perpetrator, and a
prior outcry regarding M.L.'s father.

The trial court concluded there was no Brady
issue.  See Harm v. State, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006)
(en banc) (setting out that in order to establish a Brady violation, a
defendant must satisfy three requirements:  (1) the State suppressed evidence;
(2) the suppressed evidence is favorable to the defendant; and (3) the
suppressed evidence is material) (citing Brady v. Maryland,
373 U.S. 83, 87 (1963)).  And we agree.  It is undisputed that Quinones did not
receive certain records sooner because the State did not have them;
specifically, the State did not have the records at the time of the pretrial
conference.  It is also undisputed that the State sent Quinones copies of the
records as soon as they became available.  Because there is no evidence that
the State suppressed this evidence, there is no Brady issue.  See id.

Quinones also argues that
the trial court's denial of his motion for continuance was unfair because he
needed more time to prepare for an effective cross-examination of the State's
witnesses, as well as to investigate the exculpatory information provided by
the State.  However, the State had identified Graber, through whom the CPS records
were discussed,[5]
as a potential witness more than one year earlier on October 14, 2008.  And Dr.
Nortmann and Graber had been subpoenaed to testify at trial.  Dr. Nortmann was
called the first day of trial; Graber the second.  Quinones received the records
prior to trial and had an adequate time to review the information and to
prepare to cross-examine both witnesses accordingly during the following days. 
Therefore, we conclude that Quinones has not demonstrated that the trial court
erred in denying the motion on this basis.  See Gonzales, 304 S.W.3d at
843.

Even were we to conclude the trial court
erred in denying the continuance, Quinones has not shown how the asserted
specific prejudice to his defense—his inability to effectively cross-examine
Dr. Nortmann and Graber—has harmed him.  See id.; Janecka, 937
S.W.2d at 468.  Quinones cross-examined Dr. Nortmann about M.L.'s June 2005
appointment that occurred shortly after an alleged incident that involved M.L.,
who was eight years old at the time, and an eight-year-old female friend. 
During direct examination, Dr. Nortmann testified that after this friend left
the family gathering, M.L. alleged that her friend had touched her
inappropriately and had done some other things to her of a sexual nature.  During
cross-examination, Dr. Nortmann also testified that her overall findings were
that she "felt [M.L.'s] story . . . about the
two little girls seemed implausible" and "that [M.L.] had some
indication of possible psychiatric problems that needed to be evaluated quite
soon."  Dr. Nortmann also confirmed that M.L. enhanced her story.  Dr.
Nortmann agreed that she felt, at that time, that M.L.'s story became
"bigger and bigger."  Dr. Nortmann also testified on
cross-examination that M.L.'s mother indicated to her "that one of the
reasons they were concerned [was] because [her daughter] had been complaining
about her privates hurting recently."  However, Dr. Nortmann testified
that her examination revealed nothing that would show why this was occurring. 
She also testified effectively for the defense regarding M.L.'s emotional
state.  Dr. Nortmann agreed that M.L. hallucinated at times and embellished
those hallucinations and that this would indicate possible emotional problems. 
Dr. Nortmann testified that she had referred M.L. to a local mental health
facility.

In addition, the record shows that
before Quinones cross-examined Graber about the specifics of the January 2,
2007 interview she conducted with M.L., defense counsel questioned her about
M.L.'s December 19, 2006 CPS narrative intake form.  He did so in an effort to
refresh Graber's memory of events that occurred three years earlier.  Graber
explained that the CPS narrative "gives a little more description to what
the case is concerning," and agreed that "it's a summary or synopsis
of what's coming in" and "it gives you an idea of what you're about
to work with."  After reviewing the CPS narrative, Graber agreed that it
stated the following:  (1) M.L. said that Quinones had been touching her "private
parts for a long time" and that she was having nightmares and was afraid
that Quinones was going "to hurt her, to kill her"; (2) M.L. was
concerned that she was going to see him around the holidays; (3) someone from
the school had called CPS; (4) M.L. had made previous allegations that other
family members did not believe; (5) M.L.'s mother knew about it and believed
her now; (6) her mother said that because M.L. was agitated, hallucinating, and
having trouble sleeping, she had given M.L. some of her medication; (7) with
nothing else in the record to substantiate it, the mother said there were
previous allegations that the father had sexually abused M.L. but he was
cleared; and (8) there was a history of schizophrenia in the family and
domestic violence.  The remainder of Graber's testimony related to her forensic
interview with M.L.

In sum, the record fairly reflects that defense
counsel was prepared to defend this case as to the exculpatory information, if
any, revealed in the complained-of records and that the denial of the
continuance did not specifically prejudice Quinones's defense.  See Gonzales,
304 S.W.3d at 843.  We cannot conclude that Quinones has shown
that the timing of the production of the medical records and CPS report adversely
affected his ability to effectively cross-examine Dr. Nortmann or Graber.  Therefore, even were we to
conclude that the court erred in denying Quinones's motion for continuance on
this basis, defense counsel did not make the required showing of specific prejudice
from its denial.  See Heiselbetz, 906 S.W.2d at 511-12; Janecka,
937 S.W.2d at 468.

We overrule Quinones's first issue.

II. 
Jury Instruction on Reasonable Doubt

            In
his second issue, Quinones contends that the trial court erred in instructing
the jury, over his objection, as follows:

            It is not
required that the prosecution prove guilt beyond all possible doubt; it is
required that the prosecution's proof excludes all "reasonable doubt"
concerning the defendant's guilt.

 

A. 
Applicable Law and Standard of Review

The function of the jury charge is to
inform the jury of the applicable law and to guide the jury in its application
of the law to the case that the jury must decide.  Hutch v. State, 922
S.W.2d 166, 170 (Tex. Crim. App. 1996) (en banc).  In analyzing a jury charge
issue, a court first decides whether an error exists.  Ngo v. State, 175
S.W.3d 738, 743-44 (Tex. Crim. App. 2005) (en banc).  If there is an error, we
analyze that error for harm.  Id.  The degree of harm necessary for
reversal depends on whether a defendant preserved the error by objection.  Id.
at 743.

B. 
Analysis

Relying on Paulson v. State,
Quinones asserts that any definition of beyond a reasonable doubt is
prohibited.  See 28 S.W.3d 570, 574-75 (Tex. Crim. App. 2000).  However,
in Woods v. State and more recently in Mays v. State, the Texas
Court of Criminal Appeals held that giving this same instruction to the jury
was not error.  See Mays, 318 S.W.3d 368, 389 (Tex. Crim. App.
2010); Woods, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004) (en banc); see
also Ochoa v. State, 119 S.W.3d 825, 828-29 (Tex. App.—San Antonio 2003, no
pet.) (collecting Texas cases holding that giving an instruction regarding
"all possible doubt" is not error).  Thus, while the court of
criminal appeals, in Paulson, said that it is "the better
practice" not to define that term, 28 S.W.3d at 573, it has also
determined that providing an instruction, such as the one complained of in this
case, is not error.  Mays, 318 S.W.3d at 389; Woods, 152 S.W.3d
at 115.  Likewise, we conclude that the trial court did not err in this case. 
We overrule Quinones's second issue.

III. 
Extraneous-Offense Testimony

            By
his third issue, Quinones argues that the trial court erred in admitting
extraneous-offense testimony of his alleged admissions of sexual misconduct
with M.L. in 2001, over his lack-of-notice objection and his rule 403 objection. 
See Tex. Code Crim. Proc. Ann. art.
38.37, § 3 (West Supp. 2010); Tex. R.
Evid. 403, 404(b).  By this issue, Quinones complains of testimony
provided by his sister, Katrina, and his ex-wife, Betty Dean.

A. 
Standard of Review

We review a trial court's ruling as to
the admissibility of extraneous-offense evidence under an abuse-of-discretion
standard.  Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996)
(citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim .App. 1990)
(en banc) (op. on reh'g)) (providing that the admissibility of evidence under
rule 403 is within the trial court's discretion and is reviewed only for an
abuse of that discretion); Mitchell v. State, 931 S.W.2d 950, 953 (Tex.
Crim. App. 1996) (en banc).  In other words, the trial court's determination of
reasonableness "is committed to its sound discretion" and "that
determination, [if it is] within the zone of reasonable disagreement, [does]
not constitute an abuse of discretion."  Sebalt v. State, 28 S.W.3d
819, 822 (Tex. App.—Corpus Christi 2000, no pet.).

 

B. 
Background

It is undisputed that on January 25,
2010, in response to Quinones's request, the State filed its notice of intent
to introduce evidence of extraneous offenses, bad acts, and character.  In its
notice, the State indicated that it may elect to introduce evidence of
Quinones's admission of prior sexual misconduct with M.L. through Katrina. 
This conduct was to have occurred sometime between January 2001 and January
2003, when M.L. was three years old.  The State also informed Quinones, through
this notice, that it may introduce the following admissions that Quinones made
to various family members, including Dean:  (1) he has had a problem; (2) he
sexually molests children and cannot help himself; and (3) he sought treatment
in a facility for this problem.  These admissions were allegedly made from
January 2001 to the date the State filed its notice.  It
is also undisputed that as early as June 25, 2009, six months before trial, the
State filed and delivered a potential witness list to Quinones's attorney. 
That list included the names of Katrina and Dean.

On the first day of trial, Quinones
filed his motion to exclude certain testimony.  In his motion, Quinones
complained, in relevant part, that the State's notice to elicit testimony
concerning allegations of uncharged sexual conduct between Quinones and M.L.
that allegedly occurred between the years 2001 and 2003 was improper.  The next
day, before the jury was seated, the trial court heard Quinones's motion to
exclude this complained-of extraneous-offense testimony.  At the hearing,
Quinones asserted, as a basis for his complaint, that Katrina's testimony
involved uncharged conduct and that it occurred in the early 2000s.  He also
urged a rule 403 objection, arguing that the probative value of this testimony
was substantially outweighed by its prejudicial effect.  The trial court denied
Quinones's motion.  See Tex. R.
Evid. 103(a)(1) (permitting a ruling denying a motion to exclude
testimony outside the presence of the jury to preserve error without the
necessity of repeating the same objections, but only for "such
evidence" that is the subject of the motion).

At trial, Katrina testified that
Quinones admitted to her that something happened when M.L. was three years
old.  She believed that, based on what Quinones told her, M.L. had performed
oral sex on Quinones on that occasion.

In addition, Dean provided testimony
regarding a conversation she had with Quinones about something that happened
with M.L. during this same time period.  Dean testified that Quinones told her
that M.L. "accidentally rubbed on him and he basically asked her to put
her mouth on him."  Prior to Dean's testimony, Quinones requested a bench
conference outside the presence of the jury where the following exchange
occurred between the trial court and Quinones's counsel:

COURT:         Am I
correct that the issue here is whether or not the State has to give notice of
. . . the name of the witness?

 

COUNSEL:   Well, your
Honor, my contention, it's not just the name of the witness.  My contention is
that they have to give the witness, what the testimony is going to be about.  Just—notice
isn't just a time, a place, and who is it against.  38.37 clearly states that
we're talking about the defendant and the complainant.  So, I know who the
complainant is and I can know who [sic] the time is and they can put whatever
they like in an aggravated sexual assault of child; . . . however, I
don't know the basis of that claim.  I don't know any kind of statements that
were made. 

 

COURT:         Aren't
those covered by other discovery?

 

COUNSEL:   404b.  I
requested 403(b) and I timely requested 38.37.  The only notice I received
about admissions by the defendant regarding this event in 2001 was statements
that the defendant made to his sister, Katrina Quinones.  Never have I been
given notice that the same admissions would come from this witness.

 

COURT:         State
for me, please, what you are saying to the Court is missing from the notice
that's been provided to you.

 

            . . . .

 

COUNSEL:   The
information that's been provided to me after requesting both 404(b) and 38.37
notice was that this—these admissions would come from the testimony of his
sister, not from this witness.  I have not been given proper notice as I
requested concerning these admissions.  And they intend to use this witness now
to try to enter this evidence, and I object to that.

 

The trial court overruled Quinones's objection, and Dean
provided the testimony set out above.  Quinones did not object to Dean's
testimony on the basis of rule 403.[6]

C. 
Notice Objection

1.  Applicable Law

Article 38.37 of the code of criminal
procedure provides that a defendant who timely requests notice of the State's
intent to introduce extraneous offenses during the State's case-in-chief is
entitled to notice "in the same manner as the [S]tate is required to give
notice under [r]ule 404(b)."  Tex.
Code Crim. Proc. Ann. art. 38.37, § 3.  Rule 404(b) provides
that the notice of the State's intent need only be reasonable in advance of
trial; it does not require notice be provided a certain number of days before
trial.  See Tex. R. Evid.
404(b).  The purpose behind the notice provision is to adequately make
known to the defendant the extraneous offenses that the State intends to
introduce at trial and to prevent surprise to the defendant.  Self v. State,
860 S.W.2d 261, 264 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding that an
eleven-day advance notice of an unadjudicated matter was reasonable under rule
404(b)).  Generally, what constitutes reasonable notice under rule 404(b)
depends on the facts and circumstances of the case.  See Sebalt, 28 S.W.3d
at 822 (determining that notice given on the Friday before the Monday trial was
not per se unreasonable) (citing Ramirez v. State, 967 S.W.2d 919, 923
(Tex. App.—Beaumont 1998, no pet)).

2.  Analysis

Quinones contends that the trial court
erred by admitting the extraneous-offense evidence through Katrina and Dean
because the State's notice was not reasonable notice in advance of trial as
required by article 38.37 of the Texas Code of Criminal Procedure and rule
404(b) of the Texas Rules of Evidence.  See Tex. Code Crim. Proc. Ann. art. 38.37, § 3; Tex. R. Evid. 404(b).  Quinones argues
that the State's notice, provided approximately two weeks before trial, was
unreasonable in light of (1) "the State's untimely disclosure of other
critical information on the eve of trial," and (2) "the defense's
request for a continuance to properly prepare for trial."  The State
responds that the trial court did not err because Quinones was given reasonable
notice in advance of trial and was not unfairly surprised.

Summarizing the facts set out above, on
January 25, 2010, Quinones had notice of the State's intent to introduce
evidence of extraneous offenses, bad acts, and bad character.  The State's
notice informed Quinones that evidence of his alleged prior sexual misconduct
with M.L. may be introduced through Katrina.  The State's notice also informed
him that Dean, a family member, may testify that Quinones admitted to her that
from January 2001 to the present, he has had a problem—that he sexually molests
children and cannot help himself.  Also, as early as June 25, 2009, Katrina and
Dean were identified as potential State witnesses.  The trial began on February
8, 2010.  In other words, approximately two weeks before trial Quinones
received notice of the State's intent to introduce evidence that Quinones had
admitted an alleged sexual contact with M.L. and had a problem with sexually
molesting children as early as January 2001 through witnesses who had been
identified six months earlier.

Here, in light of these facts, the trial
court may have determined that fourteen days was an adequate period to
eliminate the possibility of surprise as to Katrina's testimony.  See Self,
860 S.W.2d at 264.  The trial court may have also determined that the State may
call Dean to testify about that same event because of Quinones's admissions to
her regarding sexually molesting children during that same time period.  See
id.  Therefore, the possibility of surprise was eliminated as to the scope
of the testimony to be provided by these witnesses.  On this record, we
conclude that these determinations were within the zone of reasonable
disagreement.  See Sebalt, 28 S.W.3d at 822.

In addition, we are not persuaded by
Quinones's argument that the State's notice was unreasonable in light of its
untimely disclosure of other critical information on the eve of trial and
Quinones's request for a continuance to properly prepare for trial.  As we
concluded in Quinones's first issue, the court did not abuse its discretion in
denying Quinones's motion which alleged that the State disclosed, in an
untimely manner, the identity of a medical witness and records containing
exculpatory information.

Accordingly, considering the facts and
circumstances of this case, we conclude that the trial court did not abuse its
discretion in overruling Quinones's motion to exclude on the basis that the
State's notice was not reasonable.  See id.

 

 

D. 
Rule 403 Objection

1.  Applicable Law

Relevant evidence may be excluded under
rule 403.[7] 
Tex. R. Evid. 403.  "[I]f
its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence,"
relevant evidence may be excluded.  See id.

2.  Analysis

On appeal, Quinones contends that
evidence of his 2001 admissions offered through the testimony of Katrina and
Dean should have been excluded on the grounds that the probative value was
outweighed by the danger of unfair prejudice.  See id.  At the hearing
on his motion to exclude, Quinones argued that the basis for his objection to
Katrina's testimony was that the probative value of her testimony was
substantially outweighed by its prejudicial effect.  See id.  The trial
court overruled this 403 objection, and Katrina testified about Quinones's 2001
admission.  Subsequently, during Dean's trial testimony, Quinones requested a
bench conference where he offered only a notice objection to Dean's expected
testimony regarding the 2001 admission.  This objection was overruled. 
Quinones did not object to Dean's testimony on the basis of rule 403.

As a prerequisite for presenting a
complaint for appellate review, the record must show that a timely objection
was lodged in the trial court, an objection stating "the grounds for the
ruling that the complaining party sought from the trial court with sufficient
specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context" and complied with the requirements
of the Texas Rules of Evidence.  Tex. R.
App. P. 33.1(a)(1)(A)-(B).  Therefore, as to Dean's testimony, because
Quinones did not make a rule 403 objection, nothing has been preserved for our review. 


In addition, if evidence similar to the
objected-to evidence is admitted without objection elsewhere at trial, "no
reversible error is presented."  Lane v. State, 151 S.W.3d 188, 193
(Tex. Crim. App. 2004) (citing Valle v. State, 109 S.W.3d 500, 509 (Tex.
Crim. App. 2003)).  Here, even if we assume that Katrina's testimony about Quinones's
2001 admission to her was inadmissible, we cannot conclude that reversible
error occurred because the statements at issue were admitted without objection
elsewhere at trial—namely through Dean's testimony regarding what Quinones told
her about the same incident.  See id.

Based on the above analysis of
Quinones's lack-of-notice and rule 403 objections, we overrule Quinones's third
issue.

IV. 
Outcry Witnesses

            Quinones challenges, in his fourth issue, the
trial court's determination of the outcry witnesses.  See Tex. Code Crim. Proc. Ann. art. 38.072,
'
2(a)(3) (West Supp. 2010).  He contends that the trial court erred in admitting
outcry testimony from Graber and Susan Maxwell because neither witness was the
first person with whom M.L. spoke about the allegations; rather, the proper
outcry witness was Nenita Carrasquilla, M.L.'s school counselor.  Quinones also
asserts that the trial court erred in admitting Maxwell's outcry testimony
because the statement that M.L. made to her was unreliable.  See id. '
2(b)(2).

A. 
Standard of Review and Applicable Law

            A trial court's decision that an outcry
statement is reliable and admissible under article 38.072 will not be disturbed
on appeal absent a clear abuse of discretion.  Garcia v. State, 792
S.W.2d 88, 92 (Tex. Crim. App. 1990) (en banc).  "Under an abuse of
discretion standard, the trial court's decision to admit evidence must be
reasonable in view of all the relevant facts."  Reynolds v. State,
227 S.W.3d 355, 370-71 (Tex. App.—Texarkana 2007, no pet.) (citing Shuffield
v. State, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006)).  "We will defer
to the trial court's ruling if it is within the zone of reasonable
disagreement."  Id. at 371 (citing Shuffield, 189 S.W.3d at
787; Montgomery, 810 S.W.2d at 391).

Pursuant to article 38.072 of the Texas
Code of Criminal Procedure, the proper outcry witness is "the first
person, 18 years of age or older, other than the defendant, to whom the child
made a statement about the offense."  Tex.
Code Crim. Proc. Ann. art. 38.072, '
2(a)(3).  In allowing "the first person to whom the child described the
offense in some discernible manner to testify about the statements the child
made," article 38.072 contemplates that there can be more than one offense
and, accordingly, more than one outcry witness.  See Broderick v. State,
35 S.W.3d 67, 74 (Tex. App.—Texarkana 2000, pet. ref'd) ("Because of the
way in which the statute is written, an outcry witness is not person-specific,
but event-specific.").  In other words, two individuals may be proper
outcry witnesses if they each testify about different events, but only one
outcry witness may testify to the victim's statement about a single event.  Reynolds,
227 S.W.3d at 368 (citing Broderick, 35 S.W.3d at 73).  Therefore, so
long as separate outcry witnesses testify about separate offenses, the
testimony of each is admissible.  Broderick, 35 S.W.3d at 74.

Finally, a statement of the alleged
offense made to an outcry witness is not inadmissible because of the hearsay
rule if, among other things, "the trial court finds, in a hearing
conducted outside the presence of the jury, that the statement is reliable
based on the time, content, and circumstances of the statement."  Tex. Code Crim. Proc. art. 38.072, '
2(b)(2).  Factors a trial court may consider in assessing the reliability of a
child's statement include the following:

(1) whether the child
victim testifies at trial and admits making the out-of-court statement, (2)
whether the child understands the need to tell the truth and has the ability to
observe, recollect, and narrate, (3) whether other evidence corroborates the
statement, (4) whether the child made the statement spontaneously in his own
terminology or whether evidence exists of prior prompting or manipulation by
adults, (5) whether the child's statement is clear and unambiguous and rises to
the needed level of certainty, (6) whether the statement is consistent with
other evidence, (7) whether the statement describes an event that a child of the
victim's age could not be expected to fabricate, (8) whether the child behaves
abnormally after the contact, (9) whether the child has a motive to fabricate
the statement, (10) whether the child expects punishment because of reporting
the conduct, and (11) whether the accused had the opportunity to commit the
offense.

 

Norris v. State, 788 S.W.2d 65, 71 (Tex.
App.—Dallas 1990, pet. ref'd).  These indicia of reliability are not exclusive,
and "courts have considerable leeway in their consideration of appropriate
factors."  Smith v. State, 61 S.W.3d 409, 412-13 (Tex. Crim. App.
2001).

B. 
Background

The State identified the following
outcry witnesses:  (1) Graber, who conducted a videotaped interview with M.L.;
and (2) Maxwell, a police investigator on the case who interviewed M.L. 
Quinones challenged the State's designations and filed a motion for the trial
court to determine the proper outcry witnesses.  In his motion, Quinones
alleged that Carrasquilla was the proper outcry witness because M.L. made her initial
outcry to Carrasquilla.

The trial court heard Quinones's motion
the second day of trial.  After Carrasquilla testified at the motion hearing,[8]
the State agreed that Carrasquilla would be the proper outcry witness as to any
allegations of contacting the child's genitalia with a gun, choking the child,
digital penetration of the child's vagina, and hand contact with the child's
breasts.  Because the State had not noticed Carrasquilla as an outcry witness,
the State announced that it would not attempt to elicit such testimony from her
on direct examination.  "Miss Graber, however," as the State
continued, "is identified as an outcry witness on other matters . . .
in particular, . . . the allegations that the defendant's
penis . . . penetrated the sexual organ of the child."  The State
summarized its position as follows:

[T]he
first outcry of the details of [the defendant's penis penetrating the sexual
organ of M.L.] were [sic] made to Mindy Graber following [M.L.'s] . . . initial outcry on
other topics to Miss Carrasquilla. . . .  Miss Graber was also
identified as the first outcry on things which apparently were told to Miss
Carrasquilla.  And for that reason, the State would not attempt to elicit that
testimony from Miss Graber on direct examination as it does not appear that she
is actually the outcry witness on the indecency by contact with breasts nor
digital penetration of the sex organ. . . .  [T]hey are charged
offenses; however, because it appears that the correct outcry witness is not
identified, we would not seek that testimony on direct
examination. . . .   [H]owever, the State still proposes . . .
that Miss Graber is an outcry [witness] with regard to penile penetration and
as well as outcry [witness] on matters related to that.

 

Agreeing with the State and acknowledging its concessions
on the issues regarding Carrasquilla, the trial court ruled that it would allow
Graber to testify as the outcry witness for penile penetration.

With regard to Maxwell's outcry
testimony, the State urged the following:

Miss
Maxwell has been identified as . . . an outcry witness on [any testimony
about the defendant's mouth on the child's sexual organ or the child's mouth on
the defendant's sexual organ].  There's no evidence that anyone else was told
those matters prior to Miss Maxwell; and it would be Miss Maxwell's testimony
that this child did, in fact, tell her that.  Additionally, the child during
direct—or during examination of [sic] the hearing mentioned digital penetration
of the anus.  And Miss Maxwell was the first person she told that to, digital
penetration of the anus.

 

The trial court, however, withheld its decision regarding
whether Maxwell was a proper outcry witness pending its ruling on Quinones's
further motion challenging the reliability of M.L.'s statement to Maxwell.

A hearing was held the next day on
Quinones’s reliability challenge.  M.L. and Maxwell testified.  After hearing
that testimony and argument of counsel, the trial court concluded, under
article 38.271, that the outcry statement was sufficiently reliable and that
Maxwell was a proper outcry witness who could testify on matters not covered by
the other outcry witnesses, matters which included oral sex and digital
penetration of the anus.

C. 
Analysis

Here, the trial court did not err by determining
that each of the statements made by the child to the different witnesses
concerned different offenses and that each constituted a clear description of
each offense.  See Reynolds, 227 S.W.3d at 368; Broderick, 35
S.W.3d at 74.  The record is clear that there was more than one outcry to more
than one witness about more than one offense.  Deferring to the trial court's
ruling which we conclude was within the zone of reasonable disagreement, the
trial court properly exercised its discretion in concluding that Graber and
Maxwell were proper outcry witnesses to testify about the separate offenses
that M.L. first described in detail to each of them.  See Garcia, 792
S.W.2d at 92; see also Montgomery, 810 S.W.2d at 391.

Moreover, regarding Quinones's challenge
to the reliability of the child's statement and applying the non-exclusive
indicia of reliability or factors set out in Norris, several weigh in
favor of admissibility.  See 788 S.W.2d at 71.  At the hearing on the
reliability challenge, Maxwell, who had specialized training in interviewing
children and who had taught training classes, testified that during the course
of M.L.'s interview:  (1) she did not lead M.L.; (2) M.L. appeared to
understand the difference between telling the truth and a lie; (3) M.L. used
age-appropriate language and the expressions she used in describing the offense
were appropriate; (4) there was no suggestion that M.L. had been told what to
say; (5) M.L. told her that Quinones forced her mouth to his sexual organ, that
her mouth contacted his sexual organ, and that duct tape was used on her in
that context; (6) Maxwell did not get the impression that M.L. was fabricating;
(7) M.L.'s story made sense to Maxwell; (8) Maxwell believed M.L. had not told
anyone about these events before this interview because M.L. was embarrassed
and afraid to say anything; (9) M.L. told Maxwell that Quinones had threatened
her or members of her family if she relayed this information; and (10) because
time had passed, Maxwell believed that M.L. felt more comfortable disclosing
more information.  Maxwell also agreed that Quinones had the opportunity to
commit the offense.

On the other hand, other factors weigh
against admissibility.  See id.  There was inconsistent testimony
regarding whether oral sex had occurred.  At the outcry hearing, M.L. testified
that she could not remember what she had told Maxwell during the unrecorded
interview but that oral sex did not occur between her and Quinones on the occasion
in question.  M.L. later changed her story.  After meeting with the prosecutor
and Maxwell, M.L. testified, at the reliability hearing the next day and at
trial, that oral sex had occurred at that time.  Additionally, while Maxwell
testified that she did not believe the child fabricated the described act,
there was tension in the family regarding Quinones's presence there.  Yet, no
evidence was presented at the hearing regarding whether M.L. had a motive to
fabricate.  And there was no evidence presented at the hearing regarding
whether the child behaved abnormally after the contact.

Based on our review of the factors that
the trial court may have also considered in assessing the reliability of a
child's statement, we conclude that, as applied to the time, content, and
circumstances of M.L.'s statement, the factors weigh in favor of admitting the
outcry statement.  See id.; Tex.
Code Crim. Proc. art. 38.072, '
2(b)(2).  By this analysis we have, therefore, concluded that the trial court's
decision to admit the outcry testimony of Graber and Maxwell was reasonable in
view of all the relevant facts.  See Reynolds, 227 S.W.3d at 370-71. 
Thus, the trial court, having considerable leeway in its consideration of the appropriate
factors, Smith, 61 S.W.3d at 412-13, did not abuse its discretion when
it also determined that Maxwell's outcry statement was sufficiently reliable
because the child's statement to Maxwell was reliable.  Norris, 788
S.W.2d at 71.

Accordingly, we overrule Quinones's
fourth issue.[9]

V.  Exclusion of Defense Witnesses at Punishment
Stage

By his fifth issue, Quinones contends
that the trial court erred in disqualifying two defense witnesses during the
punishment hearing on the basis that they had violated Texas Rule of Evidence
614, commonly referred to as "the Rule."  See Tex. R. Evid. 614.  Among other things,
Quinones asserts that the trial court abused its discretion because the defense
witnesses' testimony would not have contradicted the prosecution witnesses'
testimony and the trial court did not consider less severe sanctions.

A. 
Applicable Law

Rule 614 provides that the court, by
request of either party, or by its own motion, may order the exclusion of
witnesses so they may not hear the testimony of the other witnesses.  Id.;
see Routier v. State, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003).  The
purpose of placing witnesses under the Rule is to prevent the testimony of one
witness from influencing the testimony of another, consciously or not.  Russell
v. State, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005) (en banc); Webb v.
State, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989); see Minor v. State,
91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd) (setting out that
the purpose of the Rule is to prevent corroboration, contradiction, and the
influencing of witnesses).  If a witness violates the Rule by remaining in the
courtroom after the Rule is invoked, the testimony of that witness may be
admitted or excluded at the trial court's discretion.  Bell v. State,
938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (en banc) (per curiam).

 

B. 
Background

In this case, the Rule was invoked at
the beginning of trial.  At the punishment hearing, after resting, the State
objected that two defense witnesses, Quinones's father, Miguel Quinones Jr.
(Mr. Quinones), and Quinones's sister, Katrina, were in violation of the Rule. 
Defense counsel informed the trial court that when he realized Mr. Quinones and
Katrina were mistakenly in the courtroom during the punishment testimony, he
told them to leave.  The trial court noted that Quinones's father had been in
the front row, right behind the State's counsel table.  In objecting to the
testimony of both defense witnesses, the State argued that it believed they
took seats immediately behind the State's table to intimidate M.L.'s mother
during her testimony.  In response, the trial court stated that "the
parties have a right to sit in the courtroom; but they don't have a right to be
witnesses and sit in the courtroom."

Acknowledging that it was discretionary
for the court to exclude the witnesses, defense counsel informed the court that
he "would call these witnesses to testify only to certain matters that
they had not heard about" and "would not venture into any
testimony" provided by M.L.'s mother.  Defense counsel suggested that such
relevant matters would include Quinones's past problems, Quinones as a young
boy, his involvement in family activities, how the witnesses felt about the
case and what a just punishment would be, and how this has affected them and
their immediate families.  Concluding that these matters, or any testimony that
could be presented at this point, would likely be contradictory to M.L.'s
mother's testimony, the trial court sustained the State's objection and
excluded the testimony of Mr. Quinones and Katrina from the punishment phase of
the trial.

C. 
Analysis

            First, Quinones asserts that the trial court
erred in excluding the defense witnesses because Mr. Quinones was not present
when the Rule was invoked and Katrina was not in the courtroom during the
State's punishment evidence.  However, our review of the record reveals that
after the State objected at the punishment hearing, the trial court confirmed
that Mr. Quinones "was actually sworn and given the Rule by the [c]ourt
directly . . . on the first day of trial," and defense
counsel agreed.  In addition, at the punishment hearing, defense counsel
informed the trial court that he "explained to both those witnesses that
they could sit in the room.  However, once testimony began, [he] realized that
they weren't allowed to sit in the courtroom during punishment . . . . 
So, [he] asked them to leave once it came to [his] attention that they were
still in the courtroom."  Based on defense counsel's explanation, counsel
conceded, by implication, that both Mr. Quinones and Katrina were in the courtroom
during the relevant time periods.  Thus, we are not persuaded by these
assertions.

Quinones also contends that the trial
court erred in excluding his defense witnesses at the punishment hearing for
the following reasons:  (1) the trial court's instructions to the witnesses
were ambiguous about staying out of the courtroom; (2) there was no evidence of
the truth of the State's objection that Mr. Quinones was present for the
purpose of intimidating M.L.'s mother; (3) the State waived its objection
because it did not timely object to the presence of the defense witnesses; (4)
although the trial court first said it would allow the witnesses to testify if
they covered other issues than the State's witness and did not contradict her,
it then barred the testimony suggested by defense counsel that would, as he
suggested, cover matters not covered by M.L.'s mother's testimony; (5) the
trial court failed to consider any other sanction, including allowing the
witnesses to be cross-examined about violating the Rule, excluding any
testimony that directly related to the specific punishment testimony of the
State's witness, or holding the witnesses in contempt; and (6) the trial court
failed to balance the constitutional rights of Quinones to present witnesses in
his defense against the State's right to a fair hearing.

We begin our review by considering
whether Quinones properly preserved these complaints for our review.  A
reviewing court will not consider errors, even of constitutional magnitude, not
called to the trial court's attention.  Tex.
R. App. P. 33.1(a)(1); Reyna v. State, 168 S.W.3d 173, 177 (Tex.
Crim. App. 2005) (setting out that the party complaining on appeal about a
trial court's admission, exclusion, or suppression of evidence must, at the
earliest opportunity, have done everything necessary to bring to the court's
attention the evidence rule or statute in question and its precise and proper
application to the evidence in question); see Broxton v. State, 909
S.W.2d 912, 918 (Tex. Crim. App. 1995) (en banc) (concluding that appellant
failed to preserve error where his complaint on appeal asserting constitutional
violations did not comport with his trial objection based on a state
evidentiary rule); see also U.S.
Const. amend. VI; Tex. Const.
art. I, §§ 10, 19; Weaver v. State, 657 S.W.2d 148 (Tex. Crim. App.
1983) (en banc) (providing that the right of an accused under the Sixth
Amendment to call witnesses on his behalf and to compel their attendance, if
necessary, is not absolute).  Here, the record demonstrates that Quinones did
not call these matters to the trial court's attention.  He did not object or
complain on these bases in response to the trial court's decision to disqualify
the two defense witnesses.  See Tex.
R. App. P. 33.1(a)(1).  Therefore, we conclude that Quinones did not
preserve any of the enumerated arguments for our review.  We overrule
Quinones's fifth issue.

VI. 
Conclusion

We affirm the judgments of the trial
court.

 

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Do
not publish.

Tex. R. App. P. 47.2(b).

 

Delivered
and filed the 25th

day
of August, 2011.









[1]  These three appeals were
consolidated for the purposes of briefing and will now be addressed in a single
opinion.  In addition, because this is a memorandum opinion and the parties are
familiar with the facts, we will not recite them here except as necessary to
advise the parties of the Court's decision and the basic reasons for it.  See Tex. R. App. P. 47.4.





[2]  Initials have been used to protect the
identity of the child.





[3]  In his motion for continuance, Quinones also complained
that, without time to fully investigate the new evidence, he would suffer prejudice
by being unable to effectively cross-examine Mark E. Bowles, one of M.L.'s therapists.  However, as
Quinones acknowledges on appeal, Bowles did not testify at trial so this
complaint is irrelevant to our analysis.

 

Quinones further
complained that he would also suffer prejudice because he would be unable to
effectively cross-examine witnesses regarding:

 

e.         The
sessions and evaluations of [M.L.] by the school counselor regarding the underlying
issues [M.L.] has had at school regarding "lies" told at school and
problems with peers and certain outcry statements made to that counselor[; and]

 

f.          The
Defendant has not had time to fully investigate or consult an expert to either
[sic] assist in preparing for cross examination regarding interpretation of
[M.L.'s] issues at school by either [sic] the school counselor.

 

Based on our review of the record and
the record citation provided by Quinones in his brief, Nenita Carrasquilla was
the school counselor witness referred to above.  However, Carrasquilla was
questioned by both parties outside the presence of the jury during the hearing
on Quinones's motion to determine proper outcry witnesses.  Following that
hearing, Carrasquilla was not called as a witness, outcry or otherwise.  Therefore,
as with Bowles, because Carrasquilla
did not testify at trial, this complaint is irrelevant to our analysis.





[4]  On the second day of trial, when the State called Henri
Ann Nortmann, M.D. as a witness, Quinones renewed his motion to continue on the
basis that he had not been given enough time to fully investigate the issues to
which the witness would be testifying.  The court denied the request.  No
continuance request was made when the State called Mindy Graber who is also
referred to in Quinones's appellate brief as Mindy Graeber.

 





[5]  Quinones, and later the State, used
the CPS records to refresh Graber's memory.  However, when the State asked that
the records be admitted under the rule of optional completeness, the trial
court sustained Quinones's hearsay objection.  We find nowhere in the record
where the trial court admitted the CPS records even though they are attached to
the reporter's record as State's Exhibit 5.





[6] Quinones informed the trial court that
he "requested 403(b) and [he] timely requested 38.37."  It is
apparent from the record that Quinones was presenting his lack-of-notice
argument and mistakenly referenced rule 403(b).





[7]  "'Relevant evidence' means
evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence."  Tex.
R. Evid. 401.  Under Texas Rule of Evidence 404, evidence of other
crimes, wrongs, or acts is not admissible "to prove the character of a
person in order to show action in conformity therewith" but may "be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or
accident."  Id. at R.
404. "Whether extraneous offense evidence has relevance apart from
character conformity . . . is a question for the trial court."  Moses v.
State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  On appeal, Quinones does
not challenge the relevance of this testimony; therefore, we limit our review
to his rule 403 argument.  See Tex.
R. App. P. 47.1.





[8]  At the hearing, Carrasquilla
testified that M.L. talked with her about the following:  "something about
a gun being used [and] . . . put in her vaginal area,"
"choking," "her chest area being touched," "[h]ands[,]
[fingers] being placed inside of her vaginal area," and her uncle "touching
her inside her pee pee" and "touching my privates." 
Carrasquilla stated that M.L. did not talk with her about anyone touching her
anus.  Following this conversation, Carrasquilla called CPS.





[9] Quinones also contends that the limiting instruction on
extraneous offenses "did not cover the extraneous offense" in
question because it referred only to "recent transactions or acts, other
than but similar to that which is charged in the indictment in this
case."  However, Quinones cites no specific authority and provides no
explanatory argument.  See Tex.
R. App. P. 38.1(i) ("The brief must contain a clear and concise
argument for the contentions made, with appropriate citations to authorities
and to the record).  Therefore, this contention is inadequately briefed.