

NUMBERS 13-10-00140-CR
13-10-00141-CR
13-10-00142-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MIGUEL QUINONES III,                                        Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

### On appeal from the 130th District Court
### of Matagorda County, Texas.

# Memorandum Opinion[1]

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

---

[1] These three appeals were consolidated for the purposes of briefing and will now be addressed in a single opinion. In addition, because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

A jury convicted appellant Miguel Quinones III of four counts of aggravated sexual assault on M.L., a child, *see* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2010), and one count of indecency with a child.[2] *See id.* § 21.11(a)(1) (West Supp. 2010). Quinones was sentenced to life in prison and assessed a $10,000 fine for each aggravated sexual assault conviction, and twenty years in prison plus a $10,000 fine for the indecency with a child conviction. The judge ordered that the sentences be served consecutively. By five issues, Quinones contends that the trial court erred in: (1) denying his motion for continuance; (2) giving the jury a partial definition of reasonable doubt; (3) admitting testimony regarding another offense; (4) admitting testimony of two outcry witnesses; and (5) disqualifying two defense witnesses during the punishment phase of the trial. We affirm.

## I. MOTION FOR CONTINUANCE

By his first issue, Quinones contends that the trial court erred in denying his motion for continuance, which was based on the prosecutor's disclosure of the identity of a medical witness and records allegedly containing exculpatory information on the eve of trial. Quinones argues that this was unfair because his defense counsel needed more time to prepare for an effective cross-examination of the State's witness and to investigate the exculpatory information provided by the State.

### A. Standard of Review and Applicable Law

We review a trial court's ruling on a motion for continuance under an abuse-of-discretion standard. *See Heiselbetz v. State*, 906 S.W.2d 500, 511-12 (Tex. Crim. App. 1995) (en banc); *see also* TEX. CODE CRIM. PROC. ANN. art. 29.06(6) (West

---

[2] Initials have been used to protect the identity of the child.

2006) (providing that the sufficiency of a motion for continuance shall be addressed to the "sound discretion" of the court and "shall not be granted as a matter of right").  "[I]n order to show reversible error predicated on the denial of a pretrial motion for continuance, a defendant must demonstrate both that the trial court erred in denying the motion and that the lack of a continuance harmed him."  *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010); *see* TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006) ("A criminal action may be continued on the written motion . . . of the defendant, upon sufficient cause shown . . . .").  If error is established, a defendant must still show "specific prejudice to his defense" to establish that the trial court abused its discretion in refusing to grant a continuance.  *See Heiselbetz*, 906 S.W.2d at 511-12.  Such prejudice includes unfair surprise, inability to effectively cross-examine witnesses, and inability to elicit crucial testimony from potential witnesses.  *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (en banc) (per curiam).

## B.  Background

Quinones filed a motion for continuance on February 5, 2010, and an amended motion for continuance on February 8, 2010, the first day of trial.  Quinones's motion was based on the State's January 26 through February 5, 2010 production of medical records, therapy notes, information regarding M.L.'s school counselor, and Child Protective Service (CPS) reports.  In his motion, Quinones acknowledged that the State did not have these items in their possession at the January 21, 2010 pre-trial conference and that the State did not believe these items existed at that time.  He further acknowledged that once the State received the items, it promptly faxed or forwarded copies of the records to Quinones's counsel.  Quinones argued that he had been unfairly surprised by the

3

existence and late disclosure of the records.

In his motion, Quinones also argued that "without more time to fully investigate, he would be unable to effectively cross-examine the State's witnesses," in violation of the Sixth Amendment. *See* U.S. CONST. amend. VI; *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986). Quinones complained, in relevant part, that without time to fully investigate the new evidence, he would suffer specific prejudice by being unable to effectively cross-examine witnesses regarding the following:

> a.   Any treatment, therapy, outcries or previous allegations, or allegations of sexual abuse which could inculpate other parties which only came to light with CPS reports received on the Friday before Monday's trial[;]
>
> b.   The medical examination of [M.L.] which was conducted specifically because of allegations of sexual abuse[;]
>
> . . . .
>
> d.   The medical report states that another child was accused of holding [M.L.] down with tape while being abused—which also is alleged against the Defendant. Defendant has not had the opportunity to fully investigate this claim.[3]

---

[3] In his motion for continuance, Quinones also complained that, without time to fully investigate the new evidence, he would suffer prejudice by being unable to effectively cross-examine Mark E. Bowles, one of M.L.'s therapists. However, as Quinones acknowledges on appeal, Bowles did not testify at trial so this complaint is irrelevant to our analysis.

Quinones further complained that he would also suffer prejudice because he would be unable to effectively cross-examine witnesses regarding:

> e.   The sessions and evaluations of [M.L.] by the school counselor regarding the underlying issues [M.L.] has had at school regarding "lies" told at school and problems with peers and certain outcry statements made to that counselor[; and]
>
> f.   The Defendant has not had time to fully investigate or consult an expert to either [sic] assist in preparing for cross examination regarding interpretation of [M.L.'s] issues at school by either [sic] the school counselor.

Based on our review of the record and the record citation provided by Quinones in his brief, Nenita Carrasquilla was the school counselor witness referred to above. However, Carrasquilla was questioned by both parties outside the presence of the jury during the hearing on Quinones's motion to determine proper outcry witnesses. Following that hearing, Carrasquilla was not called as a witness, outcry or

4

After hearing arguments on the motion, the trial court concluded that there was no evidence that the State intentionally withheld any information; thus, there was no *Brady* issue. The trial court later denied the motion's remaining "fully-investigate, cross-examination" argument "to the extent that [it was] a request to go fish for the information and get two weeks." In denying the motion, the trial court advised Quinones that he would have the "ability to come back with a specific instance where [he needed] time," but "at this point, it's too general for [the court] to grant at this late date."

## C.   Analysis

On appeal, Quinones's complaint focuses on the medical records of Henri Ann Nortmann, M.D., a pediatrician who saw M.L. three times prior to the events upon which Quinones's conviction is based, and the CPS report reviewed by Mindy Graber, a forensic interviewer at the Children's Advocacy Center.[4] On appeal, Quinones contends that the exculpatory evidence in these records included information about other possible causes of M.L.'s complaints about pain in her "privates," a possible alternate perpetrator, and a prior outcry regarding M.L.'s father.

The trial court concluded there was no *Brady* issue. *See Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006) (en banc) (setting out that in order to establish a *Brady* violation, a defendant must satisfy three requirements: (1) the State suppressed

---

otherwise. Therefore, as with Bowles, because Carrasquilla did not testify at trial, this complaint is irrelevant to our analysis.

[4] On the second day of trial, when the State called Henri Ann Nortmann, M.D. as a witness, Quinones renewed his motion to continue on the basis that he had not been given enough time to fully investigate the issues to which the witness would be testifying. The court denied the request. No continuance request was made when the State called Mindy Graber who is also referred to in Quinones's appellate brief as Mindy Graeber.

5

evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). And we agree. It is undisputed that Quinones did not receive certain records sooner because the State did not have them; specifically, the State did not have the records at the time of the pretrial conference. It is also undisputed that the State sent Quinones copies of the records as soon as they became available. Because there is no evidence that the State suppressed this evidence, there is no *Brady* issue. *See id.*

Quinones also argues that the trial court's denial of his motion for continuance was unfair because he needed more time to prepare for an effective cross-examination of the State's witnesses, as well as to investigate the exculpatory information provided by the State. However, the State had identified Graber, through whom the CPS records were discussed,[5] as a potential witness more than one year earlier on October 14, 2008. And Dr. Nortmann and Graber had been subpoenaed to testify at trial. Dr. Nortmann was called the first day of trial; Graber the second. Quinones received the records prior to trial and had an adequate time to review the information and to prepare to cross-examine both witnesses accordingly during the following days. Therefore, we conclude that Quinones has not demonstrated that the trial court erred in denying the motion on this basis. *See Gonzales*, 304 S.W.3d at 843.

Even were we to conclude the trial court erred in denying the continuance, Quinones has not shown how the asserted specific prejudice to his defense—his inability to effectively cross-examine Dr. Nortmann and Graber—has harmed him. *See id.*;

---

[5] Quinones, and later the State, used the CPS records to refresh Graber's memory. However, when the State asked that the records be admitted under the rule of optional completeness, the trial court sustained Quinones's hearsay objection. We find nowhere in the record where the trial court admitted the CPS records even though they are attached to the reporter's record as State's Exhibit 5.

*Janecka*, 937 S.W.2d at 468. Quinones cross-examined Dr. Nortmann about M.L.'s June 2005 appointment that occurred shortly after an alleged incident that involved M.L., who was eight years old at the time, and an eight-year-old female friend. During direct examination, Dr. Nortmann testified that after this friend left the family gathering, M.L. alleged that her friend had touched her inappropriately and had done some other things to her of a sexual nature. During cross-examination, Dr. Nortmann also testified that her overall findings were that she "felt [M.L.'s] story . . . about the two little girls seemed implausible" and "that [M.L.] had some indication of possible psychiatric problems that needed to be evaluated quite soon." Dr. Nortmann also confirmed that M.L. enhanced her story. Dr. Nortmann agreed that she felt, at that time, that M.L.'s story became "bigger and bigger." Dr. Nortmann also testified on cross-examination that M.L.'s mother indicated to her "that one of the reasons they were concerned [was] because [her daughter] had been complaining about her privates hurting recently." However, Dr. Nortmann testified that her examination revealed nothing that would show why this was occurring. She also testified effectively for the defense regarding M.L.'s emotional state. Dr. Nortmann agreed that M.L. hallucinated at times and embellished those hallucinations and that this would indicate possible emotional problems. Dr. Nortmann testified that she had referred M.L. to a local mental health facility.

In addition, the record shows that before Quinones cross-examined Graber about the specifics of the January 2, 2007 interview she conducted with M.L., defense counsel questioned her about M.L.'s December 19, 2006 CPS narrative intake form. He did so in an effort to refresh Graber's memory of events that occurred three years earlier. Graber explained that the CPS narrative "gives a little more description to what the case is

7

concerning," and agreed that "it's a summary or synopsis of what's coming in" and "it gives you an idea of what you're about to work with."   After reviewing the CPS narrative, Graber agreed that it stated the following:   (1) M.L. said that Quinones had been touching her "private parts for a long time" and that she was having nightmares and was afraid that Quinones was going "to hurt her, to kill her"; (2) M.L. was concerned that she was going to see him around the holidays; (3) someone from the school had called CPS; (4) M.L. had made previous allegations that other family members did not believe; (5) M.L.'s mother knew about it and believed her now; (6) her mother said that because M.L. was agitated, hallucinating, and having trouble sleeping, she had given M.L. some of her medication; (7) with nothing else in the record to substantiate it, the mother said there were previous allegations that the father had sexually abused M.L. but he was cleared; and (8) there was a history of schizophrenia in the family and domestic violence.   The remainder of Graber's testimony related to her forensic interview with M.L.

In sum, the record fairly reflects that defense counsel was prepared to defend this case as to the exculpatory information, if any, revealed in the complained-of records and that the denial of the continuance did not specifically prejudice Quinones's defense.   *See Gonzales*, 304 S.W.3d at 843.   We cannot conclude that Quinones has shown that the timing of the production of the medical records and CPS report adversely affected his ability to effectively cross-examine Dr. Nortmann or Graber.   Therefore, even were we to conclude that the court erred in denying Quinones's motion for continuance on this basis, defense counsel did not make the required showing of specific prejudice from its denial. *See Heiselbetz*, 906 S.W.2d at 511-12; *Janecka*, 937 S.W.2d at 468.

We overrule Quinones's first issue.

8

## II. JURY INSTRUCTION ON REASONABLE DOUBT

In his second issue, Quinones contends that the trial court erred in instructing the jury, over his objection, as follows:

> It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

### A. Applicable Law and Standard of Review

The function of the jury charge is to inform the jury of the applicable law and to guide the jury in its application of the law to the case that the jury must decide. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (en banc). In analyzing a jury charge issue, a court first decides whether an error exists. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005) (en banc). If there is an error, we analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether a defendant preserved the error by objection. *Id.* at 743.

### B. Analysis

Relying on *Paulson v. State*, Quinones asserts that any definition of beyond a reasonable doubt is prohibited. *See* 28 S.W.3d 570, 574-75 (Tex. Crim. App. 2000). However, in *Woods v. State* and more recently in *Mays v. State*, the Texas Court of Criminal Appeals held that giving this same instruction to the jury was not error. *See Mays*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010); *Woods,* 152 S.W.3d 105, 115 (Tex. Crim. App. 2004) (en banc); *see also Ochoa v. State*, 119 S.W.3d 825, 828-29 (Tex. App.—San Antonio 2003, no pet.) (collecting Texas cases holding that giving an instruction regarding "all possible doubt" is not error). Thus, while the court of criminal appeals, in *Paulson*, said that it is "the better practice" not to define that term, 28 S.W.3d

9

at 573, it has also determined that providing an instruction, such as the one complained of in this case, is not error. *Mays*, 318 S.W.3d at 389; *Woods,* 152 S.W.3d at 115. Likewise, we conclude that the trial court did not err in this case. We overrule Quinones's second issue.

## III. EXTRANEOUS-OFFENSE TESTIMONY

By his third issue, Quinones argues that the trial court erred in admitting extraneous-offense testimony of his alleged admissions of sexual misconduct with M.L. in 2001, over his lack-of-notice objection and his rule 403 objection. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (West Supp. 2010); TEX. R. EVID. 403, 404(b). By this issue, Quinones complains of testimony provided by his sister, Katrina, and his ex-wife, Betty Dean.

### A. Standard of Review

We review a trial court's ruling as to the admissibility of extraneous-offense evidence under an abuse-of-discretion standard. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim .App. 1990) (en banc) (op. on reh'g)) (providing that the admissibility of evidence under rule 403 is within the trial court's discretion and is reviewed only for an abuse of that discretion); *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (en banc). In other words, the trial court's determination of reasonableness "is committed to its sound discretion" and "that determination, [if it is] within the zone of reasonable disagreement, [does] not constitute an abuse of discretion." *Sebalt v. State*, 28 S.W.3d 819, 822 (Tex. App.—Corpus Christi 2000, no pet.).

## B. Background

It is undisputed that on January 25, 2010, in response to Quinones's request, the State filed its notice of intent to introduce evidence of extraneous offenses, bad acts, and character. In its notice, the State indicated that it may elect to introduce evidence of Quinones's admission of prior sexual misconduct with M.L. through Katrina. This conduct was to have occurred sometime between January 2001 and January 2003, when M.L. was three years old. The State also informed Quinones, through this notice, that it may introduce the following admissions that Quinones made to various family members, including Dean: (1) he has had a problem; (2) he sexually molests children and cannot help himself; and (3) he sought treatment in a facility for this problem. These admissions were allegedly made from January 2001 to the date the State filed its notice. It is also undisputed that as early as June 25, 2009, six months before trial, the State filed and delivered a potential witness list to Quinones's attorney. That list included the names of Katrina and Dean.

On the first day of trial, Quinones filed his motion to exclude certain testimony. In his motion, Quinones complained, in relevant part, that the State's notice to elicit testimony concerning allegations of uncharged sexual conduct between Quinones and M.L. that allegedly occurred between the years 2001 and 2003 was improper. The next day, before the jury was seated, the trial court heard Quinones's motion to exclude this complained-of extraneous-offense testimony. At the hearing, Quinones asserted, as a basis for his complaint, that Katrina's testimony involved uncharged conduct and that it occurred in the early 2000s. He also urged a rule 403 objection, arguing that the probative value of this testimony was substantially outweighed by its prejudicial effect.

11

The trial court denied Quinones's motion. *See* TEX. R. EVID. 103(a)(1) (permitting a ruling denying a motion to exclude testimony outside the presence of the jury to preserve error without the necessity of repeating the same objections, but only for "such evidence" that is the subject of the motion).

At trial, Katrina testified that Quinones admitted to her that something happened when M.L. was three years old. She believed that, based on what Quinones told her, M.L. had performed oral sex on Quinones on that occasion.

In addition, Dean provided testimony regarding a conversation she had with Quinones about something that happened with M.L. during this same time period. Dean testified that Quinones told her that M.L. "accidentally rubbed on him and he basically asked her to put her mouth on him." Prior to Dean's testimony, Quinones requested a bench conference outside the presence of the jury where the following exchange occurred between the trial court and Quinones's counsel:

> COURT: Am I correct that the issue here is whether or not the State has to give notice of . . . the name of the witness?
>
> COUNSEL: Well, your Honor, my contention, it's not just the name of the witness. My contention is that they have to give the witness, what the testimony is going to be about. Just—notice isn't just a time, a place, and who is it against. 38.37 clearly states that we're talking about the defendant and the complainant. So, I know who the complainant is and I can know who [sic] the time is and they can put whatever they like in an aggravated sexual assault of child; . . . however, I don't know the basis of that claim. I don't know any kind of statements that were made.
>
> COURT: Aren't those covered by other discovery?
>
> COUNSEL: 404b. I requested 403(b) and I timely requested 38.37. The only notice I received about admissions by the defendant regarding this event in 2001 was statements that the defendant made to his sister, Katrina Quinones. Never have I been given notice that the same admissions would come from this witness.

12

COURT: State for me, please, what you are saying to the Court is missing from the notice that's been provided to you.

. . . .

COUNSEL: The information that's been provided to me after requesting both 404(b) and 38.37 notice was that this—these admissions would come from the testimony of his sister, not from this witness. I have not been given proper notice as I requested concerning these admissions. And they intend to use this witness now to try to enter this evidence, and I object to that.

The trial court overruled Quinones's objection, and Dean provided the testimony set out above. Quinones did not object to Dean's testimony on the basis of rule 403.[6]

### C. Notice Objection

**1. Applicable Law**

Article 38.37 of the code of criminal procedure provides that a defendant who timely requests notice of the State's intent to introduce extraneous offenses during the State's case-in-chief is entitled to notice "in the same manner as the [S]tate is required to give notice under [r]ule 404(b)." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3. Rule 404(b) provides that the notice of the State's intent need only be reasonable in advance of trial; it does not require notice be provided a certain number of days before trial. *See* TEX. R. EVID. 404(b). The purpose behind the notice provision is to adequately make known to the defendant the extraneous offenses that the State intends to introduce at trial and to prevent surprise to the defendant. *Self v. State*, 860 S.W.2d 261, 264 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding that an eleven-day advance notice of an unadjudicated matter was reasonable under rule 404(b)). Generally, what constitutes

---

[6] Quinones informed the trial court that he "requested 403(b) and [he] timely requested 38.37." It is apparent from the record that Quinones was presenting his lack-of-notice argument and mistakenly referenced rule 403(b).

13

reasonable notice under rule 404(b) depends on the facts and circumstances of the case. *See Sebalt*, 28 S.W.3d at 822 (determining that notice given on the Friday before the Monday trial was not per se unreasonable) (citing *Ramirez v. State*, 967 S.W.2d 919, 923 (Tex. App.—Beaumont 1998, no pet)).

## 2. Analysis

Quinones contends that the trial court erred by admitting the extraneous-offense evidence through Katrina and Dean because the State's notice was not reasonable notice in advance of trial as required by article 38.37 of the Texas Code of Criminal Procedure and rule 404(b) of the Texas Rules of Evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3; TEX. R. EVID. 404(b). Quinones argues that the State's notice, provided approximately two weeks before trial, was unreasonable in light of (1) "the State's untimely disclosure of other critical information on the eve of trial," and (2) "the defense's request for a continuance to properly prepare for trial." The State responds that the trial court did not err because Quinones was given reasonable notice in advance of trial and was not unfairly surprised.

Summarizing the facts set out above, on January 25, 2010, Quinones had notice of the State's intent to introduce evidence of extraneous offenses, bad acts, and bad character. The State's notice informed Quinones that evidence of his alleged prior sexual misconduct with M.L. may be introduced through Katrina. The State's notice also informed him that Dean, a family member, may testify that Quinones admitted to her that from January 2001 to the present, he has had a problem—that he sexually molests children and cannot help himself. Also, as early as June 25, 2009, Katrina and Dean were identified as potential State witnesses. The trial began on February 8, 2010. In

14

other words, approximately two weeks before trial Quinones received notice of the State's intent to introduce evidence that Quinones had admitted an alleged sexual contact with M.L. and had a problem with sexually molesting children as early as January 2001 through witnesses who had been identified six months earlier.

Here, in light of these facts, the trial court may have determined that fourteen days was an adequate period to eliminate the possibility of surprise as to Katrina's testimony. *See Self*, 860 S.W.2d at 264. The trial court may have also determined that the State may call Dean to testify about that same event because of Quinones's admissions to her regarding sexually molesting children during that same time period. *See id.* Therefore, the possibility of surprise was eliminated as to the scope of the testimony to be provided by these witnesses. On this record, we conclude that these determinations were within the zone of reasonable disagreement. *See Sebalt*, 28 S.W.3d at 822.

In addition, we are not persuaded by Quinones's argument that the State's notice was unreasonable in light of its untimely disclosure of other critical information on the eve of trial and Quinones's request for a continuance to properly prepare for trial. As we concluded in Quinones's first issue, the court did not abuse its discretion in denying Quinones's motion which alleged that the State disclosed, in an untimely manner, the identity of a medical witness and records containing exculpatory information.

Accordingly, considering the facts and circumstances of this case, we conclude that the trial court did not abuse its discretion in overruling Quinones's motion to exclude on the basis that the State's notice was not reasonable. *See id.*

15

## D. Rule 403 Objection

### 1. Applicable Law

Relevant evidence may be excluded under rule 403.[7]   TEX. R. EVID. 403.   "[I]f its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence," relevant evidence may be excluded.   *See id.*

### 2. Analysis

On appeal, Quinones contends that evidence of his 2001 admissions offered through the testimony of Katrina and Dean should have been excluded on the grounds that the probative value was outweighed by the danger of unfair prejudice.   *See id.*   At the hearing on his motion to exclude, Quinones argued that the basis for his objection to Katrina's testimony was that the probative value of her testimony was substantially outweighed by its prejudicial effect.   *See id.*   The trial court overruled this 403 objection, and Katrina testified about Quinones's 2001 admission.   Subsequently, during Dean's trial testimony, Quinones requested a bench conference where he offered only a notice objection to Dean's expected testimony regarding the 2001 admission.   This objection was overruled.   Quinones did not object to Dean's testimony on the basis of rule 403.

As a prerequisite for presenting a complaint for appellate review, the record must

---

[7]   "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   TEX. R. EVID. 401.   Under Texas Rule of Evidence 404, evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith" but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."   *Id.* at R. 404. "Whether extraneous offense evidence has relevance apart from character conformity . . . is a question for the trial court."   *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).   On appeal, Quinones does not challenge the relevance of this testimony; therefore, we limit our review to his rule 403 argument.   *See* TEX. R. APP. P. 47.1.

16

show that a timely objection was lodged in the trial court, an objection stating "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context" and complied with the requirements of the Texas Rules of Evidence. TEX. R. APP. P. 33.1(a)(1)(A)-(B). Therefore, as to Dean's testimony, because Quinones did not make a rule 403 objection, nothing has been preserved for our review.

In addition, if evidence similar to the objected-to evidence is admitted without objection elsewhere at trial, "no reversible error is presented." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (citing *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)). Here, even if we assume that Katrina's testimony about Quinones's 2001 admission to her was inadmissible, we cannot conclude that reversible error occurred because the statements at issue were admitted without objection elsewhere at trial—namely through Dean's testimony regarding what Quinones told her about the same incident. *See id.*

Based on the above analysis of Quinones's lack-of-notice and rule 403 objections, we overrule Quinones's third issue.

## IV. OUTCRY WITNESSES

Quinones challenges, in his fourth issue, the trial court's determination of the outcry witnesses. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (West Supp. 2010). He contends that the trial court erred in admitting outcry testimony from Graber and Susan Maxwell because neither witness was the first person with whom M.L. spoke about the allegations; rather, the proper outcry witness was Nenita Carrasquilla, M.L.'s school counselor. Quinones also asserts that the trial court erred in admitting Maxwell's

17

outcry testimony because the statement that M.L. made to her was unreliable. *See id.* §
2(b)(2).

### A. Standard of Review and Applicable Law

A trial court's decision that an outcry statement is reliable and admissible under article 38.072 will not be disturbed on appeal absent a clear abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990) (en banc). "Under an abuse of discretion standard, the trial court's decision to admit evidence must be reasonable in view of all the relevant facts." *Reynolds v. State,* 227 S.W.3d 355, 370-71 (Tex. App.—Texarkana 2007, no pet.) (citing *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006)). "We will defer to the trial court's ruling if it is within the zone of reasonable disagreement." *Id.* at 371 (citing *Shuffield*, 189 S.W.3d at 787; *Montgomery*, 810 S.W.2d at 391).

Pursuant to article 38.072 of the Texas Code of Criminal Procedure, the proper outcry witness is "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3). In allowing "the first person to whom the child described the offense in some discernible manner to testify about the statements the child made," article 38.072 contemplates that there can be more than one offense and, accordingly, more than one outcry witness. *See Broderick v. State*, 35 S.W.3d 67, 74 (Tex. App.—Texarkana 2000, pet. ref'd) ("Because of the way in which the statute is written, an outcry witness is not person-specific, but event-specific."). In other words, two individuals may be proper outcry witnesses if they each testify about different events, but only one outcry witness may testify to the victim's statement about a single event. *Reynolds,* 227 S.W.3d at 368

18

(citing *Broderick*, 35 S.W.3d at 73). Therefore, so long as separate outcry witnesses testify about separate offenses, the testimony of each is admissible. *Broderick*, 35 S.W.3d at 74.

Finally, a statement of the alleged offense made to an outcry witness is not inadmissible because of the hearsay rule if, among other things, "the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2). Factors a trial court may consider in assessing the reliability of a child's statement include the following:

> (1) whether the child victim testifies at trial and admits making the out-of-court statement, (2) whether the child understands the need to tell the truth and has the ability to observe, recollect, and narrate, (3) whether other evidence corroborates the statement, (4) whether the child made the statement spontaneously in his own terminology or whether evidence exists of prior prompting or manipulation by adults, (5) whether the child's statement is clear and unambiguous and rises to the needed level of certainty, (6) whether the statement is consistent with other evidence, (7) whether the statement describes an event that a child of the victim's age could not be expected to fabricate, (8) whether the child behaves abnormally after the contact, (9) whether the child has a motive to fabricate the statement, (10) whether the child expects punishment because of reporting the conduct, and (11) whether the accused had the opportunity to commit the offense.

*Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd). These indicia of reliability are not exclusive, and "courts have considerable leeway in their consideration of appropriate factors." *Smith v. State*, 61 S.W.3d 409, 412-13 (Tex. Crim. App. 2001).

## B. Background

The State identified the following outcry witnesses: (1) Graber, who conducted a videotaped interview with M.L.; and (2) Maxwell, a police investigator on the case who

19

interviewed M.L. Quinones challenged the State's designations and filed a motion for the trial court to determine the proper outcry witnesses. In his motion, Quinones alleged that Carrasquilla was the proper outcry witness because M.L. made her initial outcry to Carrasquilla.

The trial court heard Quinones's motion the second day of trial. After Carrasquilla testified at the motion hearing,[8] the State agreed that Carrasquilla would be the proper outcry witness as to any allegations of contacting the child's genitalia with a gun, choking the child, digital penetration of the child's vagina, and hand contact with the child's breasts. Because the State had not noticed Carrasquilla as an outcry witness, the State announced that it would not attempt to elicit such testimony from her on direct examination. "Miss Graber, however," as the State continued, "is identified as an outcry witness on other matters . . . in particular, . . . the allegations that the defendant's penis . . . penetrated the sexual organ of the child." The State summarized its position as follows:

> [T]he first outcry of the details of [the defendant's penis penetrating the sexual organ of M.L.] were [sic] made to Mindy Graber following [M.L.'s] . . . initial outcry on other topics to Miss Carrasquilla. . . . Miss Graber was also identified as the first outcry on things which apparently were told to Miss Carrasquilla. And for that reason, the State would not attempt to elicit that testimony from Miss Graber on direct examination as it does not appear that she is actually the outcry witness on the indecency by contact with breasts nor digital penetration of the sex organ. . . . [T]hey are charged offenses; however, because it appears that the correct outcry witness is not identified, we would not seek that testimony on direct examination. . . . [H]owever, the State still proposes . . . that Miss Graber is an outcry [witness] with regard to penile penetration and as well as outcry [witness] on matters related to that.

---

[8] At the hearing, Carrasquilla testified that M.L. talked with her about the following: "something about a gun being used [and] . . . put in her vaginal area," "choking," "her chest area being touched," "[h]ands[,] [fingers] being placed inside of her vaginal area," and her uncle "touching her inside her pee pee" and "touching my privates." Carrasquilla stated that M.L. did not talk with her about anyone touching her anus. Following this conversation, Carrasquilla called CPS.

Agreeing with the State and acknowledging its concessions on the issues regarding Carrasquilla, the trial court ruled that it would allow Graber to testify as the outcry witness for penile penetration.

With regard to Maxwell's outcry testimony, the State urged the following:

> Miss Maxwell has been identified as . . . an outcry witness on [any testimony about the defendant's mouth on the child's sexual organ or the child's mouth on the defendant's sexual organ]. There's no evidence that anyone else was told those matters prior to Miss Maxwell; and it would be Miss Maxwell's testimony that this child did, in fact, tell her that. Additionally, the child during direct—or during examination of [sic] the hearing mentioned digital penetration of the anus. And Miss Maxwell was the first person she told that to, digital penetration of the anus.

The trial court, however, withheld its decision regarding whether Maxwell was a proper outcry witness pending its ruling on Quinones's further motion challenging the reliability of M.L.'s statement to Maxwell.

A hearing was held the next day on Quinones's reliability challenge. M.L. and Maxwell testified. After hearing that testimony and argument of counsel, the trial court concluded, under article 38.271, that the outcry statement was sufficiently reliable and that Maxwell was a proper outcry witness who could testify on matters not covered by the other outcry witnesses, matters which included oral sex and digital penetration of the anus.

### C. Analysis

Here, the trial court did not err by determining that each of the statements made by the child to the different witnesses concerned different offenses and that each constituted a clear description of each offense. *See Reynolds,* 227 S.W.3d at 368; *Broderick,* 35 S.W.3d at 74. The record is clear that there was more than one outcry to more than one

witness about more than one offense.  Deferring to the trial court's ruling which we conclude was within the zone of reasonable disagreement, the trial court properly exercised its discretion in concluding that Graber and Maxwell were proper outcry witnesses to testify about the separate offenses that M.L. first described in detail to each of them.  *See Garcia*, 792 S.W.2d at 92; *see also Montgomery*, 810 S.W.2d at 391.

Moreover, regarding Quinones's challenge to the reliability of the child's statement and applying the non-exclusive indicia of reliability or factors set out in *Norris*, several weigh in favor of admissibility.  *See* 788 S.W.2d at 71.  At the hearing on the reliability challenge, Maxwell, who had specialized training in interviewing children and who had taught training classes, testified that during the course of M.L.'s interview:  (1) she did not lead M.L.; (2) M.L. appeared to understand the difference between telling the truth and a lie; (3) M.L. used age-appropriate language and the expressions she used in describing the offense were appropriate; (4) there was no suggestion that M.L. had been told what to say; (5) M.L. told her that Quinones forced her mouth to his sexual organ, that her mouth contacted his sexual organ, and that duct tape was used on her in that context; (6) Maxwell did not get the impression that M.L. was fabricating; (7) M.L.'s story made sense to Maxwell; (8) Maxwell believed M.L. had not told anyone about these events before this interview because M.L. was embarrassed and afraid to say anything; (9) M.L. told Maxwell that Quinones had threatened her or members of her family if she relayed this information; and (10) because time had passed, Maxwell believed that M.L. felt more comfortable disclosing more information.  Maxwell also agreed that Quinones had the opportunity to commit the offense.

On the other hand, other factors weigh against admissibility.  *See id.*  There was

inconsistent testimony regarding whether oral sex had occurred. At the outcry hearing, M.L. testified that she could not remember what she had told Maxwell during the unrecorded interview but that oral sex did not occur between her and Quinones on the occasion in question. M.L. later changed her story. After meeting with the prosecutor and Maxwell, M.L. testified, at the reliability hearing the next day and at trial, that oral sex had occurred at that time. Additionally, while Maxwell testified that she did not believe the child fabricated the described act, there was tension in the family regarding Quinones's presence there. Yet, no evidence was presented at the hearing regarding whether M.L. had a motive to fabricate. And there was no evidence presented at the hearing regarding whether the child behaved abnormally after the contact.

Based on our review of the factors that the trial court may have also considered in assessing the reliability of a child's statement, we conclude that, as applied to the time, content, and circumstances of M.L.'s statement, the factors weigh in favor of admitting the outcry statement. *See id.*; TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2). By this analysis we have, therefore, concluded that the trial court's decision to admit the outcry testimony of Graber and Maxwell was reasonable in view of all the relevant facts. *See Reynolds,* 227 S.W.3d at 370-71. Thus, the trial court, having considerable leeway in its consideration of the appropriate factors, *Smith*, 61 S.W.3d at 412-13, did not abuse its discretion when it also determined that Maxwell's outcry statement was sufficiently reliable because the child's statement to Maxwell was reliable. *Norris*, 788 S.W.2d at 71.

Accordingly, we overrule Quinones's fourth issue.[9]

---

[9] Quinones also contends that the limiting instruction on extraneous offenses "did not cover the extraneous offense" in question because it referred only to "recent transactions or acts, other than but similar to that which is charged in the indictment in this case." However, Quinones cites no specific

23

## V. EXCLUSION OF DEFENSE WITNESSES AT PUNISHMENT STAGE

By his fifth issue, Quinones contends that the trial court erred in disqualifying two defense witnesses during the punishment hearing on the basis that they had violated Texas Rule of Evidence 614, commonly referred to as "the Rule." *See* TEX. R. EVID. 614. Among other things, Quinones asserts that the trial court abused its discretion because the defense witnesses' testimony would not have contradicted the prosecution witnesses' testimony and the trial court did not consider less severe sanctions.

### A. Applicable Law

Rule 614 provides that the court, by request of either party, or by its own motion, may order the exclusion of witnesses so they may not hear the testimony of the other witnesses. *Id.*; *see Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003). The purpose of placing witnesses under the Rule is to prevent the testimony of one witness from influencing the testimony of another, consciously or not. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005) (en banc); *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989); *see Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd) (setting out that the purpose of the Rule is to prevent corroboration, contradiction, and the influencing of witnesses). If a witness violates the Rule by remaining in the courtroom after the Rule is invoked, the testimony of that witness may be admitted or excluded at the trial court's discretion. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (en banc) (per curiam).

---

authority and provides no explanatory argument. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record). Therefore, this contention is inadequately briefed.

24

## B.  Background

In this case, the Rule was invoked at the beginning of trial.   At the punishment hearing, after resting, the State objected that two defense witnesses, Quinones's father, Miguel Quinones Jr. (Mr. Quinones), and Quinones's sister, Katrina, were in violation of the Rule.   Defense counsel informed the trial court that when he realized Mr. Quinones and Katrina were mistakenly in the courtroom during the punishment testimony, he told them to leave.   The trial court noted that Quinones's father had been in the front row, right behind the State's counsel table.   In objecting to the testimony of both defense witnesses, the State argued that it believed they took seats immediately behind the State's table to intimidate M.L.'s mother during her testimony.   In response, the trial court stated that "the parties have a right to sit in the courtroom; but they don't have a right to be witnesses and sit in the courtroom."

Acknowledging that it was discretionary for the court to exclude the witnesses, defense counsel informed the court that he "would call these witnesses to testify only to certain matters that they had not heard about" and "would not venture into any testimony" provided by M.L.'s mother.   Defense counsel suggested that such relevant matters would include Quinones's past problems, Quinones as a young boy, his involvement in family activities, how the witnesses felt about the case and what a just punishment would be, and how this has affected them and their immediate families.   Concluding that these matters, or any testimony that could be presented at this point, would likely be contradictory to M.L.'s mother's testimony, the trial court sustained the State's objection and excluded the testimony of Mr. Quinones and Katrina from the punishment phase of the trial.

25

## C. Analysis

First, Quinones asserts that the trial court erred in excluding the defense witnesses because Mr. Quinones was not present when the Rule was invoked and Katrina was not in the courtroom during the State's punishment evidence. However, our review of the record reveals that after the State objected at the punishment hearing, the trial court confirmed that Mr. Quinones "was actually sworn and given the Rule by the [c]ourt directly . . . on the first day of trial," and defense counsel agreed. In addition, at the punishment hearing, defense counsel informed the trial court that he "explained to both those witnesses that they could sit in the room. However, once testimony began, [he] realized that they weren't allowed to sit in the courtroom during punishment . . . . So, [he] asked them to leave once it came to [his] attention that they were still in the courtroom." Based on defense counsel's explanation, counsel conceded, by implication, that both Mr. Quinones and Katrina were in the courtroom during the relevant time periods. Thus, we are not persuaded by these assertions.

Quinones also contends that the trial court erred in excluding his defense witnesses at the punishment hearing for the following reasons: (1) the trial court's instructions to the witnesses were ambiguous about staying out of the courtroom; (2) there was no evidence of the truth of the State's objection that Mr. Quinones was present for the purpose of intimidating M.L.'s mother; (3) the State waived its objection because it did not timely object to the presence of the defense witnesses; (4) although the trial court first said it would allow the witnesses to testify if they covered other issues than the State's witness and did not contradict her, it then barred the testimony suggested by defense counsel that would, as he suggested, cover matters not covered by M.L.'s

26

mother's testimony; (5) the trial court failed to consider any other sanction, including allowing the witnesses to be cross-examined about violating the Rule, excluding any testimony that directly related to the specific punishment testimony of the State's witness, or holding the witnesses in contempt; and (6) the trial court failed to balance the constitutional rights of Quinones to present witnesses in his defense against the State's right to a fair hearing.

We begin our review by considering whether Quinones properly preserved these complaints for our review. A reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention. TEX. R. APP. P. 33.1(a)(1); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (setting out that the party complaining on appeal about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the court's attention the evidence rule or statute in question and its precise and proper application to the evidence in question); *see Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (en banc) (concluding that appellant failed to preserve error where his complaint on appeal asserting constitutional violations did not comport with his trial objection based on a state evidentiary rule); *see also* U.S. CONST. amend. VI; TEX. CONST. art. I, §§ 10, 19; *Weaver v. State*, 657 S.W.2d 148 (Tex. Crim. App. 1983) (en banc) (providing that the right of an accused under the Sixth Amendment to call witnesses on his behalf and to compel their attendance, if necessary, is not absolute). Here, the record demonstrates that Quinones did not call these matters to the trial court's attention. He did not object or complain on these bases in response to the trial court's decision to disqualify the two defense witnesses. *See* TEX. R. APP. P. 33.1(a)(1). Therefore, we

conclude that Quinones did not preserve any of the enumerated arguments for our review.   We overrule Quinones's fifth issue.

## VI.   CONCLUSION

We affirm the judgments of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 25th
day of August, 2011.